THOMAS WOOSTER *vs.* ABDOW CORPORATION..

No. 97-P-702.

Hampshire. April 17, 1998. - April 28, 1999.

Present: ARMSTRONG, LENK, & BECK, JJ.

*Handicapped Persons. Practice, Civil,* Summary judgment. *Anti-Discrimination Law,* Burden of proof, Termination of employment, Handicap, Age. *Employment,* Discrimination, Termination.

In an action alleging age and handicap discrimination in employment, the materials presented on summary judgment raised a genuine issue of material fact whether the defendant's stated reasons for terminating the plaintiff were pretexts for handicap discrimination and, as to that claim, the matter was remanded for trial. [669-673]

CIVIL ACTION commenced in the Superior Court Department on February 22, 1994.

The case was heard by *John F. Murphy, Jr.,* J., on a motion for summary judgment.

*Maurice M. Cahillane* for the plaintiff.

*Robert L. Leonard* for the defendant.

BECK, J. The issue in this age and handicap discrimination case is whether the plaintiff produced sufficient evidence of pretext "to clear the summary judgment hurdle." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 441 (1995). The plaintiff, a manager in the defendant's restaurant business, claims his discharge was in violation of State and Federal law, including G. L. c. 151B, § 4. A Superior Court judge allowed the defendant's motion for summary judgment. The plaintiff appeals, arguing there was sufficient evidence of pretext to warrant sending the case to a jury. As to the claim of handicap discrimination, we agree.

1. *Summary judgment issues.* We address first certain questions concerning the defendant's summary judgment materials, because their resolution affects the recitation of the facts. Among

the documents submitted in support of its motion for summary judgment, the defendant included an affidavit of its president, Ronald Abdow, setting out the names of those who were familiar with the plaintiff's work and attaching "a statement of Abdow to the Massachusetts Commission Against Discrimination ('MCAD') . . . in response to [the plaintiff's] claim of discrimination." In the affidavit, Ronald Abdow claimed to have "personal knowledge of some of the facts" in the attachment. The attachment itself was a letter from Abdow's lawyer on law firm letterhead, setting out Abdow's defense to the plaintiff's MCAD complaint. Under the lawyer's signature was that of Ronald Abdow, on behalf of the corporation, stating that "[t]he above information is correct to the best of knowledge and belief [*sic*]." Attached to the letter were various other documents, which supported some, but not all, of the factual allegations included in the letter.

In his opposition to the defendant's motion for summary judgment in Superior Court, the plaintiff argued that the defendant's "[employee] turnover rate statistics," as set out in the letter, "are not competent or admissible as evidence." He claimed the defendant destroyed the documents on which the statistics were based. On appeal, the plaintiff again complains of the destruction of the records used to calculate the turnover rates. He also challenges the defendant's use of the lawyer's letter, which was drafted after the plaintiff's claim of discrimination, and argues generally that the defendant's allegations as to the plaintiff's performance are "unsupported by admissible documentary evidence."

While these complaints may well have substantive merit, they are not properly before us because the plaintiff did not move to strike the inadmissible portions of Abdow's affidavit. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). See also Mass.R.-Civ. P. 56(e), 365 Mass. 824 (1974); Wright, Miller, & Kane, Federal Practice and Procedure § 2738, at 372-375 (1998). Compare *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997) (Supreme Judicial Court disregarded several parts of summary judgment affidavit because they contained hearsay and the affidavit had been challenged by motion to strike). The Superior Court judge was therefore within his discretion in considering the defendant's affidavit. *Madsen* v. *Erwin, supra.* Moreover, there is no evidence in the record that the plaintiff requested copies of the underlying employee

turnover rate documents. He sent the defendant an interrogatory asking "whether such data or statistics are routinely kept by the company." The company responded that "[t]he payroll records from which the information was compiled are maintained by the company but reports regarding the turnover rate were not usually kept by the company for an extended period of time." An explicit request to produce the data would have established whether the records survived.

2. *The facts.* Neither party disputes that the other met its initial burden in the first two stages of the discrimination analysis. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 440-442, and cases cited. The defendant, Abdow Corporation (Abdow), is a family-owned chain of nineteen restaurants in central Massachusetts. There are four specialty or dinner restaurants; the remainder are family restaurants. The plaintiff, Thomas Wooster, began work for Abdow as a management trainee at one of the defendant's family restaurants in 1981, when he was thirty-six. In 1983, he became shift manager at the P.J. Scott dinner house restaurant in Chicopee and was promoted to executive manager of that restaurant four months later. He remained in that position until he was discharged in May, 1992, at the age of forty-seven. His replacement was a younger man, apparently with no handicap.

a. *The plaintiff's prima facie case: evidence regarding handicap and age.* Because the defendant does not argue that the plaintiff has failed to establish a prima facie case of either age or handicap discrimination, for purposes of the appeal we assume the plaintiff has done so. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. at 128. See also *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 3 (1998), setting out the standards for proof of a prima facie case.

The plaintiff's evidence, in the light most favorable to him, was as follows. During his employment with Abdow, the plaintiff suffered from chronic asthma, which required several medications, including steroids, to control. He explained the effect of the steroids on his mood to Ronald Abdow, and mentioned that the medications could cause future medical problems such as cataracts and diabetes. In fact, in January and March of 1992, he had two cataract operations. During the physical examination in preparation for the first eye surgery, he discovered he had diabetes, and he informed Paul Lichwan, Abdow's vice-president for operations, of this new diagnosis. He

also had a bad back for which he had regular chiropractic treatment.

In December, 1991, Steven Abdow, Ronald's son and the plaintiff's supervisor, announced to Abdow's restaurant managers that Abdow had decided to make employee health care a "controllable expense." In announcing the change in policy, Steven Abdow admonished the managers to "make sure that we hire people . . . [who] are not going to be big insurance gobblers." When the plaintiff asked whether Steven Abdow "[was] suggesting . . . that we fire the people that use the insurance . . . there was a very long pause." Finally Steven Abdow said, "If you had a position for one individual, and you had two people for that position, if one of the people was going to be an insurance user or had reason for the insurance, and the other person didn't, you would want to go with the person that didn't." The plaintiff was aware of the volume of his own insurance claims; he felt it was "like there was no end in sight." Between December, 1991, and May, 1992, the plaintiff received calls from Abdow's central office questioning medical expenses of other employees at the restaurant he managed.

The plaintiff claimed that managers at the other dinner restaurants were considerably younger than he; that when there was a vacancy for the manager at the flagship dinner restaurant, the job did not go to him but to a younger man; and that only five of the forty-seven managers were over age forty, and of those, two were demoted, two left, and he was fired. He provided no comparable information for managers under age forty.

b. *The defendant's legitimate nondiscriminatory reason.* The plaintiff does not dispute that the defendant articulated a legitimate nondiscriminatory reason for his discharge — the plaintiff's poor performance as a manager between December, 1991, and his termination in May, 1992. The defendant's evidence of its reasons for discharging Wooster included the plaintiff's deposition testimony acknowledging his receipt of a disciplinary report; Ronald Abdow's deposition testimony claiming that the plaintiff's job performance had deteriorated over time; and Steven Abdow's deposition testimony containing certain details about the plaintiff's performance, including violations of the defendant's dress codes.

The MCAD letter reported high staff turnover rates in 1991 and 1992 at the restaurant the plaintiff managed; verbal abuse

of a female employee; increasing customer complaints; and attempts to counsel the plaintiff to improve his performance. The attachments to the MCAD letter included an unfavorable management performance review from Steven Abdow, dated February 25, 1992; the complaint of a part-time employee about her work schedule; and an employee counseling/suspension notice, also from Steven Abdow, dated December 9, 1991, based on a customer complaint, violations of grooming and uniform dress standards, and misrepresentation (which the plaintiff claimed stemmed from his account of the customer's complaint).

3. *Evidence of pretext and the appropriate standards.* We now arrive at the third stage in the plaintiff's order of proof of discrimination. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 440-443, and cases cited; *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. at 127-128, and cases cited. In order to prevail at this final stage, the plaintiff "must persuade the fact finder by a fair preponderance of the evidence that the defendant's asserted reasons were not the real reasons . . . [for the plaintiff's discharge]." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 443, quoting from *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 700 (1992). In an appeal from summary judgment, "our task is to consider whether there is evidence which generates a genuine dispute of fact on the pretext point." *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996). In that task, "[o]ur reading of the summary judgment materials is in a light most favorable to the nonmoving party, here the plaintiff." *Ibid.*, citing *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 438.

In addition to the prima facie evidence set out above, which "remains as evidence in the case," *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. 408, 413 (1998); see Liacos, Massachusetts Evidence § 5.8.5, at 236-237 (6th ed. 1994), to demonstrate pretext the plaintiff offered written evaluations he had received covering the same period as the documents the defendant introduced to show nondiscriminatory motive. The plaintiff's documents included an unsigned November 16, 1991, report on his restaurant's condition headed with the words "fantastic job"; a specialty restaurant inspection form dated January 14, 1992, signed by Steven Abdow, awarding 86 points out of 100 and commenting "very nice"; a second specialty restaurant inspection form dated·March 10, 1992,

which Steven Abdow also signed, awarding 95 points and commenting "excellent"; and a memorandum dated April 14, 1992, announcing that the plaintiff's restaurant had come in second in the competition for the "Pacesetter's Cup" for the month of March, 1992. The plaintiff also produced a letter of reference dated June 6, 1992, from Paul Lichwan stating that the plaintiff was "proficient in all functions of a restaurant's operations," as well as Lichwan's deposition testimony that the plaintiff was a good manager and that he would hire him again if he had authority to do so.

a. *Handicap discrimination claim.* The Superior Court judge found that the plaintiff "failed [to] produce sufficient evidence that the reasons articulated by Abdow for his termination were a pretext for handicap[ ] discrimination." However, in his memorandum of decision, the Superior Court judge failed to mention any of the written evaluations submitted by the plaintiff. Moreover, although he considered the evidence regarding health care costs, the judge observed that "[the plaintiff] present[ed] no evidence that Abdow ever inquired into [the plaintiff's] own use of the plan or commented on his medical expenses." But it is just this kind of "smoking gun" evidence that is not required, because it is "rare." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 445. "[T]he plaintiff's ultimate burden of persuasion may be satisfied either by direct or circumstantial evidence of discrimination." *Id.* at 445 n.8. "The ultimate issue of discrimination, raised by the plaintiff's and defendant['s] conflicting evidence as to the defendant['s] motive, is not for a court to decide on the basis of affidavits [and other summary judgment materials], but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses." *Id.* at 445.

The facts of this case are consistent with those in *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 446-447, where the Supreme Judicial Court concluded that conflicting evidence of satisfactory performance, combined with remarks about Blare's ability to do his work and evidence that younger workers were not similarly disciplined, was sufficient to raise a genuine issue of material fact as to discrimination. See *Handrahan* v. *Red Roof Inns, Inc.,* 43 Mass. App. Ct. 13, 15-17 (1997) (evidence of disciplinary warnings for failure to comply with unwritten time limits for cleaning motel rooms following disclosure of the plaintiff's epilepsy, considered against gener-

ally favorable performance evaluations which had noted plaintiff's failure to clean her assigned rooms in a timely manner in the past, although thin, sufficient to reach a jury). "The timing of the enforcement of the . . . rule . . . is . . . suspect," *id.* at 17, and along with the defendant's "practice and policies concerning employment of [people with health care expenses]," *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 447, quoting from *Lewis* v. *Area II Homecare for Senior Citizens, Inc.,* 397 Mass. 761, 767 (1986), "could support an inference that the defendant's real motive was discrimination." *Handrahan* v. *Red Roof Inns, Inc.,* 43 Mass. App. Ct. at 17.[1]

b. *Age discrimination claim.* The age discrimination count is a much closer question. The same factual dispute regarding the plaintiff's work performance applies to the plaintiff's claim of age discrimination. However, other than the undisputed fact that the plaintiff was over age forty at the time he was discharged, there is little evidence that the employer was concerned about the plaintiff's age. The question then is whether the "conflicting evidence" about the plaintiff's work performance is sufficient evidence of pretext to withstand the motion for summary judgment.

To support a claim of discrimination, the plaintiff must produce "evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for actual discrimination. '[A]bsent direct proof of [age] discrimination, evidence which may be relevant to the plaintiff's showing of pretext may include application of a certain criterion to employees [not within the protected category]; the employer's general practice and policies concerning employment of [those within the protected category]; and the employer's treatment of the plaintiff during [his] employment,' " *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. at 447, quoting from *Lewis* v. *Area II Homecare for Senior Citizens, Inc.,* 397 Mass. at 767. "The plaintiff bears the burden of persuasion on the ultimate issue of discrimination." *Blare, supra* at 445.

The case law is consistent with these requirements, notwithstanding the court's statement in *Blare* v. *Husky Injection Mold-*

---

[1]The court's observation, in *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. at 5 n.5, that "[e]vidence of employer attempts to contain or reduce workers' compensation claims, without more, is not probative of handicap discrimination," is not to the contrary. An employer may work with its employees to reduce workplace accidents.

*ing Sys. Boston, Inc.*, *supra* at 443, that "Massachusetts is a pretext only jurisdiction." In *Blare*, in addition to the prima facie evidence, the evidence that "the three remarks made by Blare's supervisor regarding the ability of Blare to work considering his age, and the evidence that other workers not in the protected category who committed similar errors were not terminated was sufficient to raise a genuine issue of material fact as to whether the defendants discriminated against the plaintiff on the basis of his age." *Id.* at 447. See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. at 16 (evidence that employer's deviation from normal management procedures in summarily terminating the plaintiff could support reasonable inference of discrimination based on perceived handicap); *Finney* v. *Madico, Inc.*, 42 Mass. App. Ct. 46 (1997) (persistent remarks over three year period that women not qualified to be managers sufficient to withstand motion for summary judgment on claim of discriminatory discharge during reduction in force); *Handrahan* v. *Red Roof Inns, Inc.*, 43 Mass. App. Ct. at 17 (jury could have disbelieved rule was an established policy when enforcement followed notice of plaintiff's epilepsy); *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. at 413-414 (explicit statement "I want a younger man" and jury's disbelief of nondiscriminatory reason satisfied "employee's ultimate burden of persuasion on the issue of discrimination," citing *Blare*, 419 Mass. at 445); *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 643-645 (1998) (several instances of disparate treatment combined with pretextual reasons for hiring decisions, including development of more reasons as discrimination claim proceeded, adequate to support claim of discrimination).

Here there are no remarks concerning age and no apparent connection between the evaluations and the plaintiff's age. The plaintiff's evidence of disparate treatment is anecdotal at best, and there is no evidence of deviation from normal management procedures connected to age in Abdow's treatment of the plaintiff. See *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 449-450, in which there was a "dispute of fact about how serious Tardanico's errors were," but we held that the plaintiff's age, and "isolated or ambiguous remarks, tending to suggest animus based on age" (citation omitted), were insufficient to withstand the employer's motion for summary judgment. See also *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426

Mass. at 129-130 (to show discriminatory discharge, at least when employer's reason for discharge is theft of company product, employee must show disparate treatment by identifying other similarly situated employees and demonstrating that their offenses are of similar seriousness). But see *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 658, 662 (1997) (reduction in force age discrimination case where jury's disbelief of defendant's explanation for termination decision sufficient to establish pretext; case also rife with "procedural tangles and . . . several critical missteps").

To withstand a defendant's motion for summary judgment, a plaintiff claiming discrimination must show something more than a conflict in the evidence regarding the employer's legitimate, nondiscriminatory explanation for the employment decision and the plaintiff's membership in a protected group. Compare *Miner* v. *Connleaf, Inc.*, 989 F. Supp. 49, 53 (D. Mass. 1997) ("the concepts of pretext and discrimination are not wholly separate"). We conclude that as to his age discrimination claim, the plaintiff has no reasonable expectation of establishing such a link. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). See also *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 440 ("Where a defendant's motion for summary judgment demonstrates that the plaintiff's evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiff's favor, we have upheld summary judgment in favor of defendants").

4. *Conclusion.* The judgment of the Superior Court allowing the defendant's motion for summary judgment on counts I, II, and III alleging age discrimination is affirmed. The judgment of the Superior Court on count IV alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, and on count VI alleging violation of G. L. c. 93, § 103, are also affirmed, because the plaintiff presented no arguments concerning these counts. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). As to count V, claiming handicap discrimination in violation of G. L. c. 151B, § 4(16), the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for proceedings on that count in accordance with this opinion.

*So ordered.*