Muse, Christopher J., A.J.
Plaintiff, Deborah Mireault (“Mireault”) brought this complaint against her former employer, Northeast Motel Associates, LP, d/b/a Peabody Hotel Group, d/b/a The Somerville Holiday Inn (“the Hotel”), alleging sexual harassment under Mass. G.L.c. 151B, §4(16A) (Count I) and retaliatory termination under Mass. G.L.c. 151B, §4(4) (Count II.) Defendant filed a Motion for Summary Judgment with this court on both counts. For the following reasons, this motion as to Counts I and II is ALLOWED.

BACKGROUND

Plaintiff was employed at-will by the defendant as the Director of Sales at The Holiday Inn Boston/Somerville beginning in December 2001. Plaintiff was responsible, inter alia, for developing business for the full-service hotel, which included 184 rooms, banquet and catering facilities.
By the fall of 2002, the Hotel had concerns about its diminishing sales and therefore began to take action on how to generate more revenue. Most significantly, the Hotel management set up a meeting for October 15, 2002 of which Mireault was aware and knew she would eventually have to attend. On that day, while senior management met, plaintiff paced outside the meeting room and peered in the glass walled room to see what was happening. Plaintiff knew the Hotel had recently terminated its Food and Beverage Manager, and that her General Manager, Mr. Edmund Tucker (“Tucker”), was expecting a business plan from her during the following week of October 22, 2002 after the October 15th meeting had concluded.
Simultaneously, on October 18, 2002, the Hotel hosted “The Taste of Somerville,” its biggest annual *615 sales and charity event of the year. Plaintiff did not show up for the event which concerned her supervisor, Ms. Pam Bathen (“Bathen”). Bathen then scheduled a meeting to discuss why Mireault failed to report to work and attend the charity event. Mireault advised Bathen that she had been looking for other employment between October 16-18, 2002, and that she would not have returned to the Hotel to work had she found another job.
Several days after being reprimanded by Bathen for not attending the charity event, Mireault contacted Human Resources and alleged that Tucker had propositioned her 10 days earlier. Moreover, plaintiff alleged that Tucker made a previous inappropriate remark[1] to Mr. Steven Seeram, the Hotel’s Group Sales Manager, while on a sales call. Seeram then reported Mireault’s comment back to Tucker, his immediate supervisor. Based on these allegations, the Hotel conducted an immediate investigation, and, by November 4, 2002, plaintiff was advised that Tucker was being transferred to a different hotel because, during the investigation, he commented that he would get back at Mireault for making a false allegation against him. Thereafter, Bathen met with Mireault on three separate occasions to ask her to focus on performing her duties. By November 26, 2002, the plaintiff and the Hotel mutually decided that Mireault would take a leave of absence and her employment would thereafter be terminated as of December 24, 2002.

DISCUSSION

Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusory statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).
Massachusetts courts have recognized that summary judgment is often appropriate in employment discrimination cases where the party resisting judgment rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. See Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34 (2005) (granting summary judgment to employer in claim of age and sex discrimination because employee could not raise pretext by criticizing soundness of employer’s decision-making process, or by arguing employer’s assessment of her job performance); Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997) (summary judgment appropriate in employment discrimination cases where defendant’s motion demonstrates that plaintiff is “unable to offer admissible evidence of the defendant’s discriminatory intent, motive or state of mind sufficient to carry the plaintiffs burdens and support a judgment in plaintiffs favor”); Wooster, 46 Mass.App.Ct. at 673 (granting summary judgment to employer, and holding that for plaintiff to survive a Rule 56 motion, he “must show something more than a conflict in the evidence regarding the employer’s legitimate, nondiscriminatory explanation for the employment decision and the plaintiffs membership in a protected group”).
However, summary judgment is inappropriate where a plaintiff can establish a prima facie claim of employment discrimination. See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 540-41 (2001) (finding plaintiff in a sexual harassment claim survived summary judgment by providing evidence that her supervisors, foremen, and line workers collectively rubbed against or bumped her on a consistent basis, made sexually explicit comments about her body, and made sexually suggestive gestures in her direction, all over an extended period of time).

Sexual Harassment

In Massachusetts, employers are prohibited from discriminating against their employees on the basis of sexual harassment pursuant to G.L.c. 151B, §4(16A). To establish such a claim, the plaintiff must demonstrate that the sexual conduct or harassment was so severe and pervasive that a reasonable person in the employee’s position would have found it created a hostile, intimidating, or abusive work environment, and that the employee’s own job performance or some other aspect of her employment was affected by the harasser’s conduct. Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 678-79 (1993). “Whether an environment is sufficiently hostile or abusive” must be judged “by ‘looking at all the circumstances,’ including the ‘frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.’ ” Clark County School District v. *616 Breeden, 532 U.S. 268, 270-71 (2001), quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778-89 (1998). Moreover, the unwelcome conduct must be both subjectively and objectively offensive, meaning that evidence of sexual harassment will be considered from the view of a reasonable person in the plaintiffs position. See College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 162 (1987); Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411-12 (2001).
Under certain circumstances, single incidents of sexual conduct can be so severe and pervasive as to constitute a hostile work environment and establish a valid claim of sexual harassment. See Faragher, 524 U.S. at 782 (where the harasser, an agent of plaintiffs employer, repeatedly touched female employee’s bodies without invitation, including plaintiffs buttocks, made motions of sexual simulation, and made disparagingly demeaning references towards women). However, Chapter 15 IB does not prohibit all use of profane or offensive language. Prader v. Leading Edge Prods., Inc., 39 Mass.App.Ct. 616, 619-20 (1996). Moreover, single or occasional instances of off-color comments are often insufficient as a matter of law to create a sexually hostile environment. See e.g., Breeden, 532 U.S. at 271 (“simple teasing, off-hand comments, and isolated incidents unless extremely serious will not amount to discriminatoiy changes in terms and condition of employment”); Chamberlain v. Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990) (finding no hostile work environment existed despite plaintiff s supervisor having made five sexual advances towards plaintiff within a five-week time period); see also MCAD Sexual Harassment in the Workplace Guidelines, §II(C) (3) (“ ‘A few isolated remarks over a period of time’ are generally insufficient to meet the pervasiveness standard").
Other jurisdictions have held that where a comment is too ambiguous to support a claim of sexual harassment, the claim cannot stand. See Smith v. County of Culpepper, 191 F.3d 448 (4th Cir. 1998) (where a plaintiff claimed her supervisor sexually harassed her when he said that her salary had been budgeted and she could “pay him back” by taking a road trip with him, which plaintiff interpreted was a sexual proposition was too ambiguous to find sexual harassment); DiCenso v. Cisneros, 96 F.3d 1004, 1006 (7th Cir. 1996) (where tenant’s claim that a landlord told her she could pay rent in other ways was found to be a “vague invitation” and the court reaffirmed its view that “isolated and innocuous incidents” do not support a finding of sexual harassment).
Under G.L.c. 151B, §5, an aggrieved party must file a timely administrative complaint for sexual harassment with the Massachusetts Commission Against Discrimination (“MCAD”). Prior to November 2002, a claim was considered timely if filed within six months after the challenged conduct occurred.[2] Thomas v. EDI Specialists, Inc., 437 Mass. 536, 541 (2002). However, if the plaintiff can establish that the alleged conduct was part of a continuing violation, the time in which she must file may be extended. Cuddyer, 434 Mass. at 539.
[A] plaintiff who demonstrates a pattern of sexual harassment that creates a hostile work environment and that includes conduct within the six-month statute of limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct.

Id.

Here, Mireault alleges Tucker, an agent of the Hotel, sexually harassed her based on two[3] events: a single comment Tucker allegedly made on April 3, 2002 to one of Mireault’s subordinates; and an alleged proposition on October 15, 2002. Because both instances allegedly occurred prior to November 2002, plaintiff was bound to the six-month statutory time standard in filing her claim. Defendant argues that even though plaintiffs claim is timely as to the alleged proposition of her in October 2002 (because she filed with the MCAD in March 2003), the conduct in April 2002 is barred by the limitations period. Rather, plaintiff would only have had until October 3, 2002 to file her claim based on the April 3, 2002 comment absent a finding by this court that a continuing violation existed. Defendant therefore concludes that plaintiffs sexual harassment claim is untimely, and no continuing violation existed on Tucker’s part to extend the six-month time standard. Further, even assuming a continuing violation existed as to Tucker’s conduct, defendant argues that the comment itself does not constitute sexual harassment because it was too vague and ambiguous. The court agrees.
With regard to the alleged conduct that occurred in October 2002, the court finds that Tucker’s comment was too vague and ambiguous to constitute sexual harassment for two primary reasons. First, plaintiff admitted that she did not know what Tucker was referring to when, after asking her to have dinner and drinks with him, they could “see what happens after that.” Rather, she had to ask him for clarification twice and whether his suggestion was sexual in nature. Assuming Tucker made the comment, it is too vague, ambiguous and innocuous to connote sexual harassment. Instead, the comment was synonymous to Breeden where the conduct was isolated in nature and not so egregious as to constitute sexual misconduct in the workplace. 532 U.S. at 271. Second, sexual advances, without more, are not enough to establish a pervasive and hostile work environment. For example, in Chamberlain v. Realty, Inc., the First Circuit found *617 no such environment existed even where a supervisor made five sexual advances toward the plaintiff in a five-week time period. 915 F.2d at 783. Thus, if five overt sexual advances in such a short time period cannot support a claim for sexual harassment, certainly one ambiguous suggestion, or even an outright advance, cannot without more.
Having found the alleged conduct that occurred in October 2002 was not indicative of sexual harassment, the court turns to the conduct of April 2002 and addresses whether a continuing violation existed. For purposes of this analysis, the court assumes a continuing violation existed to encapsulate conduct that occurred outside the six-month limitations period, and finds that the April 3, 2002 comment does not establish sexual harassment. Dispositive of this issue is Ramdell whereby the Supreme Judicial Court emphasized that “an employee who alleges sexual harassment must show that the employer’s conduct was intentionally or in effect hostile, intimidating, or humiliating to the plaintiff in a way which affected her performance or the conditions of her employment.” 415 Mass, at 678-79. Therefore, plaintiffs reliance on her subordinate’s feelings about the comment Tucker allegedly made to the subordinate is insufficient to support a finding that Tucker sexually harassed her. This is especially true in light of the summary judgment record which demonstrates that Mireault did not hear the comment first-hand, nor was it directed towards, or related to her.

Retaliatory Termination

Employment relationships in Massachusetts are presumptively “at-will,” meaning the employment relationship can be terminated by either the employer or employee without notice, for any reason or no reason. Wright v. Shriners Hosp. For Crippled Children, 412 Mass. 469, 472 (1992). When suing one’s former employer for retaliatoiy termination under G.L.c. 15 IB, §4(4), the plaintiff-employee must make a prima facie showing that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action at the time or after protected conduct occurred; and (3) a causal nexus exists between the adverse action and the protected activity. Mole v. Univ. of Massachusetts, 442 Mass. 582, 591-92 (2004).
Adverse employment actions under G.L.c. 151B, §4(4) consist of a defendant’s action “to discharge, expel, or otherwise discriminate” against an employee. Id. at 592, n.14. To support such an adverse employment action, the plaintiff must show that the employer took adverse action against her which materially disadvantaged her with regard to the terms and conditions of her employment. MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996).
A plaintiff is allowed to assert she was constructively terminated by her employer to establish pretext in a retaliatoiy discharge claim, especially when the employer defends on voluntariness grounds. A “(c]onstructive discharge occurs when the employer’s conduct effectively forces an employee to resign.” GTE Products Corp. v. Stewart, 421 Mass. 22, 33-34 (1995), quoting Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244-245 (1994). The employer’s acts involuntarily act to sever the employment relationship and the constructive discharge is thereby regarded as a firing rather than a resignation. Id. Generally, an employer’s (or its agent’s) single, isolated event will not be enough to support a constructive discharge claim, including “evidence of a single unfavorable performance review or even of a demotion.” Id. at 34. Rather, the working conditions “must be unusually ‘aggravated’ or amount to a ‘continuous pattern’ before the situation will be deemed intolerable.” Id. at 35, quoting Turner, 7 Cal.4th at 1247.
Defendant argues that plaintiff has failed to establish a prima facie case for retaliatory discharge because she cannot prove the second prong of the Mole test, i.e., that she suffered an adverse employment action. Rather, the Hotel asserts this claim should be dismissed on summary judgment because the following facts are not in dispute: (1) Mireault agreed to leave the Hotel voluntarily; (2) the Hotel had a legitimate, non-retaliatoiy reason for agreeing with Mireault to end her employment; and (3) Mireault cannot show the Hotel’s non-retaliatoiy reasons for agreeing with her to end her employment were pretext. Plaintiff counters that although she “agreed” to leave the hotel, she was constructively discharged. The court disagrees.
The summary judgment record is replete with testimony that plaintiff voluntarily left the Hotel, and that the Hotel’s actions were not pretext. Thus, for the following reasons, plaintiffs retaliatory termination claim cannot stand.
First, in October 2002, after not showing up for the ‘Taste of Somerville” charity event, Mireault shared that she was looking for employment elsewhere. Other than a verbal reprimand for missing the biggest charity event of the year, the Hotel did nothing to demonstrate retaliation against plaintiff for seeking other employment. Second, after Mireault filed an in-house complaint with HR about Tucker’s conduct, the Hotel conducted an immediate investigation, and subsequently reassigned Tucker to another hotel based on comments he made that he would retaliate against Mireault for falsely accusing him. Thus, the Hotel was actually protecting Mireault by removing Tucker, her immediate supervisor, and attempting to keep her in the Sales Director position. Third, by November 2002, plaintiff had become increasingly doubtful that she could perform her duties, and expressed these concerns to the management staff. Only after plaintiff affirmatively told management that she could no longer perform her job, was action taken to determine what to do regarding her employment. After being given two options regarding her employment, Mireault voluntarily signed a release form, which clearly indi *618 cated that she would be given a leave of absence and terminated thereafter.
After examining these facts in their totality, the court finds that plaintiff has failed to establish a prima facie case of retaliatory termination. Instead, the Hotel did everything possible to retain the plaintiff as its Sales Director and protect her from any alleged impropriety. Most significantly, as soon as Tucker expressed that he would retaliate against Mireault for falsely accusing him of sexually harassing her, the Hotel immediately reassigned him. Moreover, plaintiff was an at-will employee; therefore the Hotel did not have to have a reason for terminating her. By her own admission, plaintiff could no longer perform her duties, well after Tucker was reassigned. Thus, the Hotel terminated her well after removing Tucker, and after she stated she could no longer perform her job. As such, no pretext existed and plaintiff was not constructively discharged.

ORDER

For the reasons stated herein, it is hereby ordered that defendant’s Motion for Summary Judgment pursuant to Mass.R.Civ.P. 56 as to both Counts is ALLOWED.

 Plaintiff alleges that on April 3, 2002, Tucker commented to Seeram about a woman Tucker met on a sales call that “she wants a stiff dick stuck in her because that’s what she’s used to.” Seeram then reported back to Mireault (as his immediate supervisor) about Ticker’s conduct.

 Effective November 2002, G.L.c. 15 IB, §5 was revised to extend the time of filing to 300 days after the alleged act of discrimination.

 In her Opposition, plaintiff attempts to introduce additional evidence of Tucker’s misconduct to support her claim of sexual harassment. This additional evidence included: a comment Tucker allegedly made about Bathen, i.e., that “[she] slept her way to the top”; a comment about HR Director, Ms. Heather Goff (“Goff’) that “she was a little bitch who needed to get laid to bring her down to size”; and a joke he made about a hotel guest, a suspected lesbian, getting involved with the plaintiff. However, at the time plaintiff reported the two incidents to Goff for investigation, she conceded she did not know of comments made to her subordinates and that they should be questioned.