Wilkins, Douglas H., J.
The plaintiff, Patricia Haraden (“Haraden”), has brought this action to recover damages arising from the alleged employment discrimination of the defendants, Verizon New England, Inc. (“Verizon”) and Wendy Prouty (“Prouty”) (collectively the “Defendants”).[1] The matter is now before the court on the Defendants’ motion for summary judgment. For the reasons set forth below, the Defendants’ motion is DENIED in part and ALLOWED in part.
BACKGROUND
The facts are briefly summarized in the light most favorable to Haraden, the non-moving party, reserving additional facts for later discussion. Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005). Haraden began working for Verizon in July 1989. In or around May 2006, when Haraden was working for Lance Chrisman (“Chrisman”), Chrisman told Haraden that her job at Verizon was being eliminated. Chrisman officially notified Haraden in late July/early August 2006 that Verizon was giving her thirty (30) days to find another job within Verizon.
In late August 2006, Haraden applied to be Prouty’s Executive Assistant. Prouty interviewed Haraden in early September 2006 and thereafter offered Haraden the position. Haraden accepted this offer and began working for Prouty on or about September 10, 2006.
On or about November 13, 2006, Haraden took an approved medical leave of absence due to her fatigue and related symptoms. On or around January 2007, Haraden was diagnosed with chronic iron deficiency anemia. While out on medical leave, Prouty completed Haraden’s 2006 performance evaluation and gave Haraden a “Developing” rating. Haraden challenged this rating, which Prouty later changed to “Performing” after she contacted Chrisman.
Haraden returned from her medical leave on a part-time basis on or about June 18, 2007. Before returning, Haraden requested that she be able to eat her lunches in the neighboring cafeteria and that she *188 have a modified work schedule. Haraden resumed working full-time on or about July 18, 2007.
On or about September 2007, Verizon determined that it needed to implement a reduction in force (“RIF”). Susan Molnar, Prouty’s manager, informed Prouty that she had to eliminate one person in her workgroup. Prouty selected Haraden for layoff and told Haraden on November 1, 2007 that her position was being eliminated. Prouty further informed Haraden that her last day would be November 30, 2007.
Following her RIF notification, Haraden began searching for a new job within Verizon. As of November 30, 2007, the last day of her RIF period, Haraden had not yet secured a position. Haraden received two extensions to the original RIF period. Haraden was not able to secure a new position at Verizon and her last day at Verizon was December 14, 2007.
Oh August 1, 2008, Haraden filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination. She filed this lawsuit in the Middlesex Superior Court on July 28, 2010.
DISCUSSION
A.Summary Judgment Standard
Summary judgment is appropriate when “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to ajudgment as a matter of law.” Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983), quoting Mass.R.Civ.P. 56(c). To succeed in such a motion, the moving party must “affirmatively demonstrat[e] that there is no genuine issue of fact on every relevant issue raised by the pleadings.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), quoting Mathers v. Midland-Ross Corp., 403 Mass. 688, 690 (1989). The moving party can discharge this burden by showing an absence of evidence to support the case asserted by the non-moving party. Id. Once this showing has been met, the burden then shifts to the non-moving party who must “show with admissible evidence the existence of a dispute as to material facts.” Id,, quoting Godbout v. Cousens, 396 Mass. 254, 261 (1985). To establish such a dispute, the nonmoving party must assert more than “mere allegations or denials of his pleading[s], . . . [he] must set forth specific facts . . .” Mass.R.Civ.P. 56(e). Moreover, “[s]upporting and opposing affidavits [must] be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein.” Id.
B.Existence of a Disability
Verizon questions whether Haraden has a disability or is perceived as having a disability. For purposes of c. 151B, “disability” is defined, in relevant part, as:
(a) a physical or mental impairment which substantially limits one or more major life activities or a person; (b) a record of having such impairment; or (c) being regarded as having such impairment. . .
A juiy could find that Haraden has proven a disability under this test. For one thing, Prouty stated that Verizon would provide an accommodation for a disability and admitted that she did so in Haraden’s case. She was also aware that Haraden went out on disability leave. That permits the inference that Verizon and Prouty perceived Haraden as having a disability. In addition, Haraden was diagnosed with chronic iron deficiency anemia. She had muscle weakness and extreme fatigue that interfered with her ability to drive, shop and have a social life and shortness of breath that interfered with her talking on the phone on occasions. Those limitations, if believed, would permit a conclusion that her condition limited her ability to perform major life activities. Even when she returned to work in June 2007, she had some fatigue, slept ten to twelve hours per day (down from eighteen hours earlier), had some muscle weakness and had gastrointestinal issues.
C.COUNT I: Unlawful Discrimination
Haraden alleges that Verizon terminated her employment because of her disability and, even if Verizon had articulated a legitimate business reason for eliminating her position, its reason was a pretext.[2] Given the Court’s limited focus at the summary judgment stage and the applicable legal principles, there are sufficient facts in the summary judgment record before the court to support Haraden’s inference of unlawful discrimination.
Verizon argues that Haraden cannot establish that Verizon’s non-discriminatory business reason for terminating her employment was a pretext. Verizon did articulate a legitimate business reason for firing Haraden. Verizon management told Prouty to reduce her group by one head count. That reduction in force, however “does not mean that [Verizon] is free to make its employment decisions on impermissible grounds: ‘even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons.’ ” Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34, 42 (2005). Prouty stated that she chose to eliminate the only administrative support position that could be eliminated under collective bargaining, because the other positions had a greater relationship to sales and therefore elimination could have an adverse impact on sales targets. While Haraden argues about the relative importance of the positions to sales numbers, the stated reason was non-discriminatory.
The key question, then, is whether Prouty’s stated reason was a pretext for targeting Haraden because of her disability. The giving of a false reason may warrant an inference of pretext. See Knight v. Avon Prods., Inc., 438 Mass. 413, 422 (2003). The permissible inference *189 of pretext, if made, is enough to support a finding that the defendants acted with discriminatory animus under the Massachusetts “pretext only” rule. Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 98 (2009) (“There was ample evidence from which a jury could have inferred that Wal-Mart’s stated reasons were pretexts, and consequently that Wal-Mart acted with discriminatory intent”); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 118 (2000); Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 443-46 (1995).
The plaintiff need not point to a “smoking” gun to prove pretext. Wooster v. Abdow Co., 46 Mass.App.Ct. 665, 670 (1998). “(T)he plaintiffs ultimate burden of persuasion may be satisfied . .. by . .. circumstantial evidence of discrimination.” Id., quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 445 n.8 (1995). Among the relevant considerations are remarks about the plaintiffs ability to do work, and evidence that individuals outside the protected class were not denied employment. Id. While this case does not contain the kind of positive performance reviews present in Wooster and Blare, the plaintiff did have approximately 20 years of service with Verizon without apparent performance problems. As noted in the next paragraph, there are many other pieces of the puzzle that the plaintiff has assembled to prove pretext and discriminatory motive.
On summary judgment record, there is no doubt that a jury could find that Prouty did not get along with Haraden and did not want Haraden working at Verizon. Whether the evidence supports an inference that Prouty’s true motivation was Haraderis handicap is a much closer question. The record contains little alternative explanation for her dislike, but sometimes people just do not get along.
The plaintiffs circumstantial evidence of handicap discrimination includes:
Prouty’s arguably unsupported sub-par rating of the Plaintiff as “developing,” which she entered into Verizon’s computer system without consulting with the plaintiff during the plaintiffs disability leave,[3] based upon only two months of work without consulting Haraderis prior supervisor allegedly contrary to Verizon policy;
Prouty’s later grudging change of that rating to “performing” in a notation that did not erase the full impact of the earlier rating;
Prouty’s initial resistance to accommodating the plaintiffs proposed 10 to 6 work schedule because of her disability;
Prouty’s subsequent objections to the plaintiffs schedule necessitated by her disability and false accusations of arriving at work later than agreed;
Prouty’s keeping secret notes on Haraden, but not other employees, upon the plaintiffs return from disability leave;
Prouty’s alleged statement, in response to a medical absence that “I know you’re sick but I really feel that you’re taking advantage of me”;
Prouty’s refusal to give Haraden more responsibility for payroll and other matters allegedly because she was afraid Haraden would go out sick again;
Prouty’s decision to lay off the plaintiff as part of the RIF only weeks after Haraden informed Prouty of scheduled fibroid surgery, which Haraden later cancelled because of Prouty’s reaction;
Prouty’s failure to consider any other employee for the layoff, even though her “sales force” actually monitor third-party vendors such that the loss of one employee could be absorbed by other employees without loss of sales;
Prouty’s failure to engage in analysis to determine the actual cost or benefit associated with laying off different employees;
Haraderis status as the only disabled employee in Prouty’s department;
Prouty’s shifting claims as to whether it was essential to have her executive assistant stationed at her own office;
Haraderis experience and skills as a Verizon employee for nearly two decades;
Prouty’s knowledge of Haraderis job interview with Bowman and her alleged attempt to cover up that knowledge, which did not come from Haraden;
Prouty’s refusal to authorize an extension of the RIF period and directives not to let Haraden in the building even though the plaintiff had a scheduled interview with Crawford (allegedly contrary to policy, as the policy was confirmed by Verizon attorney Jack White); and
Verizon’s refusal to hire her for other positions for which she was allegedly qualified, in circumstances where Prouty may have had input.
While virtually all of these events are contested in whole or in part, the Court must assume that they occurred for purposes of summary judgment.
Given the arguable role of Haraderis disability in a number of these events, a jury may infer that Prouty was motivated at least in part by the plaintiffs disability or perceived disability. Whether or not she communicated to other Verizon decision makers, her understanding of Haraderis disability or her reaction to that disability, Prouty’s discrimination, implemented by her successful advocacy that Verizon lay off Haraden as executive assistant and not rehire her, may be found to be “a material and important ingredient” or “the active efficient cause in bringing about” plaintiffs termination. Lipchitz v. Raytheon Company, 434 Mass. 493, 506 n.19 (2001). See also Cariglia v. Hertz Equipment Rental Corp., 763 F.3d 77, 80-82 (1st Cir. 2004), and Freeman v. Package Machinery, 865 F.2d 1331, 1342 (1st Cir. 1988).
*190 Given the RIF, this may be a case where both legitimate and illegitimate considerations contributed to the employer’s action. Haddad, 455 Mass. at 112-13. In a “mixed motive” case, the plaintiff must first establish that “a proscribed factor played a motivating part in the challenged employment decision.” Id. at 113. Once the requisite showing is made, the “employer may not prevail [merely] by showing ... a legitimate reason for its decision; the employer ‘instead must show that its legitimate reason, standing alone, would have induced it to make the same decision.’ ” Id., quoting Wynn, 431 Mass. at 666. “[W]hether the employer has met'its burden of proving that another legitimate, nondiscriminatoiy reason actually led it to make the decision, is normally for the jury or other finder of fact to decide.” Wynn, 431 Mass. at 670 (emphasis added). For that reason, a mixed-motive situation is not a good candidate for summary judgment.
The defendant’s position boils down to the assertion that “Verizon's conduct was unrelated to Plaintiffs medical conditions.” That proposition is less than certain. Many subsidiary facts in. Verizon’s Rule 9A(b)(5) statement are disputed, based upon opposing evidence. There is a genuine issue of material fact as to whether Verizon’s lawful reasons for terminating Haraden were a pretext for discrimination.
D. COUNT II: Failure to Provide Reasonable Accommodation
Second, Haraden allege’s that Verizon failed to provide her with reasonable accommodations. To succeed in a claim for failure to provide reasonable accommodations, the plaintiff must establish that she is a qualified handicapped person within the meaning of G.L.c. 15 IB and capable of performing her job with a reasonable accommodation, that she requested a reasonable accommodation, that her employer refused to provide it, and that as a result of that refusal, she suffered some harm. Alba v. Raytheon Co., 441 Mass. 836, 843 n.9 (2004). The record shows that Haraden asked for two accommodations when she returned to Verizon after her medical leave. First, she asked that she be given access to the cafeteria in the adjacent building. Second, she asked that she be granted a modified work schedule, wherein she would start and end her day later. It is undisputed that Verizon granted each of Haraden’s requests, although Verizon faced limitations with Haraden’s first request as the cafeteria was closing. See id. at 165, 174.[4] Verizon’s motion is accordingly allowed as to Count II.
E. COUNT III: Unlawful Retaliation
Count III alleges that Verizon and Prouty unlawfully retaliated against Haraden by (1) denying her modified work schedule, (2) giving her an inaccurate and poor work evaluation, (3) obstructing her entrance into the building, (4) terminating her employment, and (5) sabotaging her attempt to obtain subsequent employment.
General Laws c. 151B, §4(4) makes it unlawful for an employer “to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [G.L.c. 15IB, §5].” The Supreme Judicial Court has recently articulated the elements of a claim under this subsection:
A claim of retaliation may succeed even if the underlying claim of discrimination fails, provided that in asserting her discrimination claim, the claimant can “prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination.” Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 121 (2000), quoting Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995). In the absence of direct evidence of a retaliatoiy motive, to make out a prima facie case of retaliation, the plaintiff must show that “he engaged in protected conduct, that he suffered some adverse action, and that ‘a causal connection existed between the protected conduct and the adverse action.’ ” Mole v. University of Mass., 442 Mass. 582, 591-92 (2004), quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). This causal connection may be inferred, for example, where “adverse action is taken against a satisfactorily performing employee in the immediate aftermath of thé employer’s becoming aware of the employee’s protected activity.” Mole v. University of Mass., supra at 592. However, the employer’s desire to retaliate against the employee must be shown to be a determinative factor in its decision to take adverse action. Abramian v. President & Fellows of Harvard College, supra.
Psy-Ed Corp. v. Klein, 459 Mass. 697, 706-07 (2011). To establish the prima facie case of retaliation, the plaintiff must show that she engaged in protected conduct, that she suffered some adverse action, and that there is a causal connection between the adverse action and the protected conduct. Mole v. University of Mass., 442 Mass. 582, 591-92 (2004). In the absence of direct evidence of retaliation, a plaintiff has “the burden of establishing a prima facie case of retaliation, and, in the wake of the defendants’ introduction of nonretaliatoiy reasons for the various actions taken, the burden of proving that the articulated nonretaliatoiy reasons were pretext.” Id. at 591.
For each of Haraden’s allegations, there is sufficient evidence in the record before the court to establish that Haraden engaged in protected conduct, namely that she took medical leave as a result of her disability.
However, there is insufficient evidence that Verizon’s refusal to let the plaintiff enter the building was in retaliation for her leave of absence in early 2007 or by her requests for accommodation (both of which were granted). Haraden is not competent to testify as *191 to why these actions took place. See Mass.R.Civ.P. 56(e) (supporting evidence must be based upon personal knowledge). Nor is there evidence that she was denied an accommodation. She may prove her case by circumstantial evidence, but this is not a case where “adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer’s becoming aware of the employee’s protected activity.” Psy-Ed Corp., 459 Mass. at 706-07 (quoting cases; citations omitted). The alleged retaliatory exclusion from the building occurred well after the protected activity. In any event, the exclusion, by itself, does not amount to adverse employment action to support a stand-alone claim.
Haraden also alleges that her employment was terminated and that she was denied rehiring in retaliation for her taking medical leave. These claims mirror the direct claims of discrimination in that they link those alleged direct acts to the ultimate conclusion, namely Haraden’s permanent separation from Verizon. Prouty’s allegedly discriminatory evaluation and animus occurred in the immediate aftermath (in fact, during) the plaintiffs disability leave. This supports an inference of causation. There is a genuine issue of material fact as to whether Verizon’s business reason for discharging Haraden in part as a result of that retaliatory evaluation was a pretext for retaliation. The Defendants’ motion is accordingly denied on these points.
F. COUNT IV: Unlawful Interference
Haraden alleges that Prouty interfered with Haraden’s procurement of future employment.[5] Prouty argues that Haraden has failed to allege that Prouty acted with actual malice. It is precisely Prouty’s alleged malice towards Haraden that creates the inference of discriminatory intent, which qualifies as a “spiteful, malignant purpose, unrelated to [Verizon’s] legitimate corporate interest.” See Blackstone v. Cashman, 448 Mass. 255, 260 (2007). “Discrimination constitutes an improper means or motive for purposes of an interference claim, and constitutes actual malice that, if proved, would defeat the [defendant’s] conditional privilege.” Bray v. Community Newspaper Co., 67 Mass.App.Ct. 42, 48 (2006) (reversing grant of summary judgment where there was evidence that defendants subjected plaintiff to pattern of age discrimination, causing her to resign from her job).[6] There is a genuine issue of material fact as to Prouty’s malicious involvement in Haraden’s termination and denial of reemployment while she worked at Verizon.
There is a limit to the proof, however. There is no evidence in the record that Prouty knew of Haraden’s interviews with Raddin, Bochman, or Elwell. Therefore, Haraden’s claim that Prouty intentionally interfered with her procurement of positions with these supervisors is not actionable.
Regarding Haraden’s interview with Mr. Bowman, the evidence in the record, taken in the light most favorable to Haraden, suggests that Mr. Bowman was enthusiastic about Haraden’s candidacy when he first spoke with her. Further, Prouty was aware of this interview and Haraden was not offered the position. Regarding Haraden’s employment opportunity with Crawford, there is evidence in the summary judgment record that Crawford spoke with Prouty via instant message, asking her if Haraden was “releasable.” Haraden was not offered a position with Crawford. Thus, there is a permissible inference that Prouty interfered with Haraden’s business relationships.
There is also a genuine issue of material fact of whether Prouty acted with actual malice towards Haraden. Although Prouty argues that Haraden’s allegations are insufficient to overcome this summary judgment motion, Haraden’s argument that Prouty acted with actual malice, or an improper motive, finds support in the summary judgment record.
The Defendants’ motion is accordingly DENIED with respect to Haraden’s claim concerning Crawford and Bowman only, otherwise the motion is ALLOWED.
G. COUNT V: AIDING AND ABETTING
Finally, Haraden alleges that Prouty aided and abetted Verizon’s violations of c. 15 IB by terminating her employment and sabotaging her attempt to obtain subsequent employment. Prouty’s main argument is that she cannot aid and abet herself. The claim, however, is that she aided and abetted her employer. As discussed above, there is a genuine issue of material fact of whether Verizon unlawfully discriminated against Haraden. If Verizon discriminated, the facts certainly permit the conclusion that Prouty aided and abetted that discrimination. The Defendants’ motion is accordingly denied on that point.[7] For the same reasons, Haraden has established a genuine dispute of fact regarding Prouty’s alleged interference with her right to work in an environment free from discrimination.[8]
ORDER
It is therefore ORDERED that the Defendants’ motion for summary judgment is DENIED in part and ALLOWED in part. An order will enter:
1. Granting summary judgment on Count II to the defendants;
2. Granting summary judgment to the defendants as to denial of entry and reasonable accommodations on Count III, but otherwise denying summary judgment on Count III;
3. Granting summary judgment to the defendants on Count IV, except as to alleged interference with the Crawford and Bowman opportunities;
4. Otherwise denying the defendants’ motion for summary judgment.

 In her complaint, Haraden brought six (6) claims against the defendants: (1) unlawful discrimination against Verizon, (2) failure to provide reasonable accommodations against Verizon, (3) unlawful retaliation against Verizon and Prouty, *192 (4) unlawful interference against Prouty, (5) aiding and abetting against Prouty, and (6) intentional interference with an advantageous business and contractual relationship against Prouty.

 To prevail on a claim of discrimination, an employee must prove, “membership in a protected class [under G.L.c. 151 B], harm, discriminatory animus, and causation." Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39 (2005). Once an employee satisfies the prima facie case, an “employer can rebut the presumption by articulating ‘a lawful reason or reasons for its employment decision [and] producting] credible evidence to show that the reason or reasons advanced were the real reasons.” Abramian v. President & Fellows of Harvard, 432 Mass. 107, 116-17 (2000), quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 442 (1995) (alterations in original). If such a lawful reason is demonstrated, the burden shifts to the employee who must “show that the basis of the employer’s decision was unlawful discrimination.” Id. at 117. With respect to reduction in force, an employee can satisfy this burden by “producing some evidence that her layoff occurred in circumstances that would raise a reasonable interference of unlawful discrimination.” Sullivan, 444 Mass. at 45.

 Prouty and Haraden did communicate on other matters during the disability leave.

 Although there is a dispute as to whether the agreed upon start time was 9:30 a.m. or 10:00 a.m., the process whereby Haraden and Verizon discussed this accommodation and came to an agreement constituted the “interactive process,” if case law requires such a process. See Thompson v. Department of Mental Health, 76 Mass.App.Ct. 586, 596-97 (2010). See id. at 597 (“interaction envisions mutual exploration, not a process in which one side is required to serve up possible solutions while the other side simply awaits the arrival of an offer to its liking”). Further, the accommodation was reasonable. See id. at 595-96.

 “In an action for wrongful interference with contract the plaintiff must prove that the plaintiff had a contract with a third party, the defendant knowingly induced the third party to break that contract, the defendant’s interference was improper in motive or means, and the plaintiff was harmed by the interference.” Abramian, 432 Mass at 122.

 See also Comey v. Hill 387 Mass. 11, 19-20 (1982) (action based on age discrimination supported jury verdict for plaintiff on intentional interference claim); Draghetti v. Chimielewski, 416 Mass. 808, 817 (1994); Martins v. University of Mass. Medical Sch., 75 Mass.App.Ct. 623, 634 (2009) (holding that interference claim against supervisors should have been submitted to jury in conjunction with discrimination claims); Steranko v. Irforex, Inc., 5 Mass.App.Ct. 253, 273 (1977) (“Discrimination constitutes an improper means or motive for purposes of an interference claim and constitutes actual malice”).

 An individual can be held personally liable for aiding and abetting G.L.c. 151B. Beaupre v. Cliff Smith & Assocs., 50 Mass.App.Ct. 480, 490-91 (2000).

 It is unlawful “[f]or any person to . . . interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter.. .” G.L.c. 151B, §4(4A).