## Susan Handrahan *vs.* Red Roof Inns, Inc.

No. 96-P-126.

Middlesex. February 10, 1997. - June 23, 1997.

Present: Brown, Kaplan, & Perretta, JJ.

*Anti-Discrimination Law,* Handicap, Burden of proof. Prima facie case, Employment, Damages. *Practice, Civil,* Instructions to jury. *Evidence,* Expert opinion. *Damages,* Punitive.

In an action alleging handicap discrimination in employment in violation of G. L. c. 151B, § 4, the plaintiff met her burden of establishing a prima facie case [16]; where the defendant articulated a legitimate nondiscriminatory reason for the plaintiff's discharge, the plaintiff further carried her burden of proving that the asserted reason was a pretext [16-18].

At the trial of an action alleging handicap discrimination in employment, the judge's instructions on the issue of pretext, based on *Blare* v. *Huskey Injection Molding Sys. Boston, Inc.,* 419 Mass. 437 (1995), contained no reversible error. [18-19]

At the trial of an action alleging handicap discrimination in employment, the judge properly admitted expert testimony to assist the jury in assessing the amount of punitive damages [20-21], and there was no error in his excluding the use of the finding of lack of probable cause in the matter by the Massachusetts Commission Against Discrimination in the defendant's opening statement, where the evidence was never proffered at trial [21-22].

Evidence at the trial of a handicap discrimination case was sufficient to warrant the judge to submit the issue of punitive damages to the jury. [22]

At the trial of a handicap discrimination in employment case, the issue of "front pay" damages was correctly submitted to the jury [23-24] and there was no basis in the evidence for consideration of reinstatement as an alternative to front pay [24-25]: however, the front pay award was excessive, even after remittitur, as lacking support in the record, and the matter was remanded for recomputation of those damages [25].

Civil action commenced in the Superior Court Department on April 30, 1992.

The case was tried before *John C. Cratsley,* J.

*Douglas W. Stoddart* for the plaintiff.

*Scott C. Moriearty* (*Laurie Rubin* with him) for the defendant.

*Stephen S. Ostrach*, for New England Legal Foundation, amicus curiae, submitted a brief.

BROWN, J. On April 30, 1992, the plaintiff, Susan Handrahan, filed this action in Superior Court alleging that the defendant, Red Roof Inns, Inc. (Red Roof), discriminated against her on the basis of her handicap.[1] See G. L. c. 151B, § 4. Following a jury trial, a jury awarded the plaintiff $1,705,000 in damages; that amount was comprised of $55,000 in back pay, $600,000 in front pay, $50,000 for emotional distress, and $1,000,000 in punitive damages. The defendant then filed motions for judgment notwithstanding the verdict (n.o.v.), new trial, and remittitur. The judge denied the defendant's motions for judgment n.o.v. and new trial but allowed its motion for remittitur, reducing the front pay award by $112,200 and the punitive damage award by $900,000.[2] Judgment was subsequently entered for the plaintiff in the amount of $732,700.[3] Both parties appeal from the judgment.

We first consider the defendant's contention that the trial judge erred in denying its motion for judgment n.o.v. The defendant asserts that there was insufficient evidence to support the jury's finding of discrimination under G. L. c. 151B, § 4(16).[4]

In bringing a claim for handicap discrimination under this section, the plaintiff bears the initial burden of establishing a prima facie case. *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 447 (1996). Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate reason for its actions. *Ibid.*

---

[1]Annie Cowles, a coworker, joined the plaintiff in this action. She too alleged that she had been discriminated against because of handicap. The jury, however, found in favor of the defendant. Cowles has not appealed.

[2]The plaintiff, under protest, agreed to the remittitur in lieu of a new trial.

[3]The amount includes prejudgment interest.

[4]That section, in pertinent part, provides that it shall be unlawful "[f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of handicap, any person alleging to be a qualified handicapped person . . . ." G. L. c. 151B, § 4(16), as inserted by St. 1983, c. 533, § 6.

Thereafter, the burden shifts back to the employee to show that the employer's asserted reason was not the true reason, but rather a pretext.[5] *Ibid.* "[I]f the fact finder concludes that the plaintiff has proved that the employer's reasons are a pretext,[6] then the plaintiff prevails." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 446 (1995).

From the evidence presented at trial, the jury could have found the following facts. The plaintiff, an epileptic, began working for the defendant as a housekeeper in 1983. At that time, she did not disclose her epilepsy to the defendant because she feared that she might be fired. From December, 1983, through December, 1990, the plaintiff received favorable performance evaluations and, on several occasions, was generally noted as being a good employee. The plaintiff, however, was often criticized for her inability to clean her assigned rooms in a timely manner.

On the morning of April 10, 1991, the plaintiff suffered an epileptic seizure while at her brother's home. Since the plaintiff was scheduled to work that day, her sister-in-law called the defendant and spoke with one of its female employees. She told the woman that the plaintiff had had a "grand mal seizure," and requested that she relay this information to the plaintiff's boss. The woman agreed to do so. When the plaintiff returned to work the next day, her boss, Brian Thompson, requested a note from her doctor. The plaintiff subsequently obtained a doctor's note indicating that she could return to work. The note, which contained the heading "Neurological Services," made no mention of the plaintiff having had a seizure. On April 16, 1991, the plaintiff told Thompson that she needed to leave work early because her medication had made her tired.

On April 11, 1991, Annie M. Cowles, a former coworker of the plaintiff, filed a complaint against the defendant with the Massachusetts Commission Against Discrimination. In

[5] "The ultimate burden of persuading the fact finder that the defendant[] intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 765 (1986).

[6] Massachusetts is a "pretext only" jurisdiction. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 443 (1995). For a discussion of the comparison between the Massachusetts "pretext only" position and the Federal "pretext plus" position, see *id.* at 442-446.

her complaint, Cowles alleged that the defendant discriminated against her on the basis of her epilepsy.

On May 27, 1991, the plaintiff received a disciplinary warning for failing to complete her room assignments. Three days later, the plaintiff received a second warning for not completing her rooms in the allotted time frame. At that time, the plaintiff was warned that if she fell behind again she would be terminated. On June 4, 1991, the plaintiff was fired after she failed, once again, to finish cleaning her assigned rooms within the allotted time.

1. *Evidence of discrimination.*

a. *Prima facie case.* Contrary to the defendant's contention, we think that the plaintiff met her initial burden of establishing a prima facie case. "To establish the prima facie case of unlawful employment discrimination on the basis of handicap pursuant to G. L. c. 151B, a plaintiff who has been terminated from employment must show that: (1) [s]he suffers from a handicap; (2) [s]he is a 'qualified handicapped person'; and (3) [s]he was fired solely because of [her] handicap." *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 821 (1997), and cases cited. Here, the plaintiff introduced sufficient evidence on each of the required elements.[7]

b. *Defendant's articulated reason.* It is undisputed that the defendant articulated a legitimate nondiscriminatory reason for its actions. It was the defendant's contention at trial that it terminated the plaintiff because she routinely failed to clean her assigned rooms within the allotted time. According to the defendant, each housekeeper was expected to comply with a thirty minute per room requirement ("thirty-minute rule"). The defendant contended that, in an effort to become more competitive, it began to enforce strictly its thirty-minute rule.

---

[7]The defendant argues on appeal that the plaintiff failed to show that she was a "qualified handicapped person." See *Labonte* v. *Hutchins & Wheeler*, 424 Mass. at 822; *Talbert Trading Co.* v. *Massachusetts Commn. Against Discrimination*, 37 Mass. App. Ct. 56, 59-60 (1994). However, the defendant did not raise this contention in its motions for directed verdict and judgment n.o.v., and therefore has waived the issue for appeal. We reject the defendant's claim that it properly preserved this issue when it argued, during its motion for directed verdict, that its legitimate nondiscriminatory reason for discharging the plaintiff was her inability to do the work within the allotted time. Moreover, there was no evidence or argument presented at trial that it was her handicap, epilepsy, that caused her failure to clean her assigned rooms within the allotted time.

The defendant stated that, after implementing this stringent enforcement policy, the plaintiff continued to have difficulty completing her room assignments. The defendant introduced evidence that the plaintiff was given two warnings, and was not terminated until she failed for a third time to comply with the thirty-minute rule.

c. *Evidence of pretext.* Although the evidence is slim, the jury reasonably could have found the defendant's asserted reason to be a pretext. Based on the evidence, the jury could have disbelieved the defendant's claim that the thirty-minute rule was an established company policy. The plaintiff indicated that the first time she learned of the thirty-minute rule was May 30, 1991, the date she received her second disciplinary warning.[8] Although some of the plaintiff's evaluations refer to a company standard, none mentions a thirty minute per room requirement. Moreover, the housekeeping handbook contains no mention of the thirty-minute rule. In fact, Thompson, during cross-examination, acknowledged that the thirty-minute rule was not "per se" in the handbook.[9]

There was also conflicting evidence as to when the thirty-minute rule was implemented. According to Thompson, the thirty-minute rule was already in place when he returned to Framingham in February, 1990.[10] However, Patricia V. Freeman, the head housekeeper at that time, indicated that the thirty-minute rule was not implemented until some time after Thompson arrived.

The timing of the enforcement of the thirty-minute rule as to this plaintiff is also suspect and could support an inference that the defendant's real motive was discrimination. The defendant asserts that the plaintiff's difficulties in timely completing her room assignments were long-standing. Yet despite this recurring criticism, her reviews throughout her employment with Red Roof were generally good. Moreover, prior to her disclosure of her handicap, she never received a warning for failing to complete her assignments, nor was she ever disciplined on that basis.

---

[8]The disciplinary letter made reference to the thirty-minute rule.

[9]The jury could have found that, in so testifying, Thompson contradicted his earlier statement on direct examination that the manual made reference to the thirty-minute rule.

[10]From 1987 through February, 1990, Thompson was general manager at the defendant's New London, Connecticut property. Prior to that time, he was an assistant manager at the Framingham location.

The defendant's explanation that the sudden stepped-up enforcement of the thirty-minute rule in May, 1991, was motivated by economic concerns also could have been rejected by the jury. Thompson testified that toward the beginning of 1991, the company began to focus on controlling costs, and that in January or February of that year, there was emphasis placed on lowering the number of minutes spent cleaning each room. However, when asked whether there was an increased focus on enforcement of the thirty-minute rule during this time period, 1990 to 1991, Gregg Weisz, another employee of the defendant, testified that he could not recall such an increase. The defendant contends that Weisz's testimony did not contradict that of Thompson's because Weisz at that time worked at a Red Roof Inn in Salem, New Hampshire. However, there was evidence that both the Framingham and Salem locations were controlled by the same regional director, Mark G. Workman. Therefore, the jury could have concluded that, if there were such a shift in direction, Weisz would have been aware of it. Based on this somewhat equivocal evidence, the jury could have disbelieved some or all of the testimony of the defendant's agents that their real motivation in strictly enforcing the thirty-minute rule was to contain costs. See *Finney* v. *Madico, Inc.*, 42 Mass. App. Ct. 46, 51 (1997).

On the foregoing evidence, the jury could reasonably have concluded that the thirty-minute rule was not a well-established company policy, as the defendant contended, but rather a new rule implemented and enforced only after the defendant learned of the plaintiff's handicap. Accordingly, the trial judge correctly denied the defendant's motions for a directed verdict and for judgment n.o.v.

2. *Jury instructions.* The trial judge instructed the jury that "once the plaintiff has established a prima facie case and shows that the employer's articulated reasons are pretext . . . the plaintiff is entitled to recover for illegal discrimination under Chapter 151B." The defendant argues that the judge erred in not instructing the jury[11] that the plaintiff must prove not only that the employer's asserted reasons are a pretext,

---

[11]The defendant requested that the jury be instructed that, "the plaintiffs have the burden of proving that the proffered reasons are pretextual, that is not the true reason and that the real reason for the terminations was their disability."

but also that they are a pretext for discrimination.[12] See note 6, *supra*. Essentially, the defendant asks this court to depart from the teachings of *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra*, wherein, in dicta, at 446, the court said:

> "Combined with establishment of a prima facie case by a preponderance of the evidence, a showing of pretext eliminates any legitimate explanation for the adverse hiring decision and warrants a determination that the plaintiff was the victim of unlawful discrimination. The plaintiff need not conclusively exclude all other possible explanations for the decision and prove intent beyond a reasonable doubt."

Acknowledging that the *Blare* case was an appeal from a grant of summary judgment, we nonetheless believe that we are constrained, even in the face of thin evidence of pretext, to follow the language of *Blare*.[13] As the judge's instructions flowed from and were consistent with the teaching of *Blare*, we cannot rightly say the judge committed reversible error in this regard.[14]

---

[12]We would be remiss if we failed to cite language in *Labonte* v. *Hutchins & Wheeler*, 424 Mass. at 821, that "[a] plaintiff could still prevail by showing that the reason given by the employer is merely a pretext for discrimination."

[13]The defendant urges us to reject *Blare* and adopt the standard employed by the majority in *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502 (1993). The Supreme Judicial Court, however, appears to favor the position taken by the dissent in that case. "The dissent reasoned that a showing of pretext entitles the plaintiff to a determination of discrimination. Otherwise, 'under the majority's scheme, a victim of discrimination lacking direct evidence will now be saddled with the tremendous disadvantage of having to confront, not the defined task of proving the employer's stated reasons to be false, but the amorphous requirement of disproving all possible nondiscriminatory reasons that a factfinder might find lurking in the record.' " *Blare*, 419 Mass. at 444, quoting from *St. Mary's Honor Center* v. *Hicks*, *supra* at 534-535 (Souter, J., dissenting).

[14]Similarly unavailing is the defendant's companion argument that *Blare* is inapposite here because the plaintiff herself introduced a different nondiscriminatory explanation for the defendant's conduct: i.e., the defendant's desire to employ lower wage workers. The defendant contends that, even if the jury found that this was the true reason for the plaintiff's discharge, they, in light of the judge's instructions, would have been obligated to find for the plaintiff. In his closing, counsel for the plaintiff argued as follows:

### 3. *Evidentiary rulings.*

a. *Admission of expert testimony.* To assist the jury in assessing the amount of punitive damages, the plaintiff, over the defendant's objection, was permitted to introduce expert testimony concerning the value of Red Roof. Michael Bradley, an "expert" in the hotel industry, testified that the $620,000,000 which a buyer paid to acquire Red Roof in 1993 was probably a fair price. The defendant does not challenge Bradley's qualifications as an expert. Instead, the defendant maintains that the plaintiff failed to provide an adequate foundation for his testimony. Specifically, the defendant contends that — since Bradley was not involved in the actual purchase and was not privy to the specifics of the transaction — there was no basis for him to evaluate Red Roof's worth.

We agree with the trial judge that the defendant's objection went to the weight and not the admissibility of the evidence Although Bradley's testimony with regard to the purchase price was based exclusively on published reports, the plaintiff did not object to its admission. Once the $620,000,000 figure came in without objection, we think that there was a reasonable basis for Bradley to assess whether the buyer paid a fair

---

"There was a secondary *benefit* to firing these two women who had epilepsy. Brian Thompson killed two birds with one stone when he fired Annie and Susan. In eight months he eliminated two of his highest paid workers, saving approximately $5,700 in labor costs in Susan's firing alone." (Emphasis supplied.)

It is important to note that the plaintiff argued that the savings in labor costs was a secondary benefit of the plaintiff's termination, not a reason for it.

During deliberations, the jury requested additional instructions, asking the judge the following question:

"If the articulated reason for termination is not agreed upon, . . . does the reason hidden by a pretext have to be handicapped?"

The defendant argues that this question indicates that at least some members of the jury were considering the savings in labor costs as an alternative nondiscriminatory reason for the plaintiff's firing. Without speculating on the many possible meanings of the jury's question, the judge's response, to which both parties agreed, was appropriate. In his response, the judge told the jury that they must determine if the defendant's asserted reason was a pretext. In addition, the judge reminded the jury that "the plaintiff bears the burden of persuasion on the ultimate issue of discrimination." The trial judge's carefully crafted response stayed true to the teachings of *Blare* while emphasizing that the burden of proving discrimination remained with the plaintiff.

price for its acquisition.[15] Therefore, we find no abuse of discretion. See *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 211 (1982) ("The admission of expert testimony rests in large part in the sound discretion of the trial judge").

b. *Exclusion of agency finding.* The defendant next argues that the trial judge erred in excluding from evidence the Massachusetts Commission Against Discrimination's (MCAD) finding of lack of probable cause. See and compare *Tate* v. *Department of Mental Health*, 419 Mass. 356, 364 (1995) (MCAD finding considered on summary judgment). Specifically, the defendant maintains that it was error for the judge to exclude the MCAD finding because it was "relevant to the supposed 'egregiousness' or 'recklessness' of Red Roof's conduct" and thus, could have made a difference in the jury's assessment of punitive damages. The defendant, however, did not articulate this contention below. On the plaintiff's pretrial motion in limine the defendant argued that the MCAD finding should have been admitted because it was relevant to whether the plaintiff could prove her claim of discrimination by a preponderance of evidence. Although the defendant referred to punitive damages during a colloquy between defense counsel and the judge, the defendant's remarks were addressed to the judge and centered on whether he should permit the jury, in light of the MCAD finding, to consider punitive damages at all.[16] "Having stated specifically the basis of [its] objection, the defendant[], in fairness, ought not

---

[15]During voir dire, Bradley indicated that he had extensive experience (twenty-six years) in the hotel industry. Bradley testified that, in his opinion, Red Roof has an excellent reputation in the industry, and a tremendous customer base. Bradley further indicated that he was familiar with the buyer's methods of evaluation. Later, when testifying before the jury, Bradley detailed his experience in the development, acquisition, and disposal of hotel properties. Bradley informed the jury of the techniques he uses in evaluating hotel properties, and indicated that Red Roof's buyer employs the same techniques. In addition, Bradley stated that he had recently worked for one of Red Roof's northeast competitors, and that that experience helped him to assess whether the buyer paid fair market value for Red Roof.

[16]After the trial judge indicated that the defendant would not be allowed to refer to the MCAD finding during its opening, the following colloquy ensued:

> DEFENSE COUNSEL: "Well, Your Honor, I think the other issue, I guess, although it is not in front of the Court right now, it would certain- ly tend to be limiting and request that no charge on punitive

to be permitted to urge other grounds in this court." *Kagan* v. *Levenson*, 334 Mass. 100, 107 (1956).

Moreover, the judge's ruling merely prohibited the use of the MCAD finding in the defendant's opening. See note 16, *supra.* As such, it was preliminary in nature. The docket fails to disclose the final resolution of the motion in limine, and merely indicates that the motion was "allowed as to any mention in the defendant's opening." It does not appear from the record on appeal that the disputed evidence was ever proffered.

The defendant also argues that the trial judge erred in permitting the plaintiff to introduce evidence that it contested her unemployment compensation claim. However, the defendant did not object below, and has waived the issue for review. See *Freyermuth* v. *Lufty*, 376 Mass. 612, 616 (1978).

4. *Damages.*

a. *Punitive damages.* The jury awarded the plaintiff $1,000,000 in punitive damages. Thereafter, the trial judge, concluding that the amount was excessive, reduced the award to $100,000. On appeal, the defendant maintains that the trial judge erred in allowing the jury to consider punitive damages because there was no evidence to suggest that its conduct was

---

damages in this case. I think in the — in an investigation by a state agency which found not only no cause, but found no probable cause would be another factor to indicate that the jury should consider no punitive damages."

THE JUDGE: "I don't have a problem there. I don't know how I am going to rule on punitive yet, until the evidence unfolds, but I don't have a problem using that decision to help me make my judgment about a punitive damage instruction. I just do have a problem about putting it in front of the jury and I [am] going to ask — "

DEFENSE COUNSEL: "A final comment, Your Honor."

THE JUDGE: "Yes."

DEFENSE COUNSEL: "Would just be that I think that the arguments of plaintiff's counsel go more to the weight or consideration that this jury should give that decision as opposed to whether or not it is fundamentally admissible and the jury can consider it."

THE JUDGE: "All I am going to ask you is not mention it in the opening."

DEFENSE COUNSEL: "Thank you, Your Honor."

intentional or reckless.[17] We disagree. There was evidence presented at trial from which the jury could have concluded that, upon learning of the plaintiff's condition, the defendant endeavored to bring about the plaintiff's termination. Although the evidence of discrimination was less than overwhelming, we agree with the trial judge that it was sufficient to warrant submitting the issue of punitive damages to the jury. See *Bain* v. *Springfield*, 424 Mass. 758, 767 (1997) (punitive damages are appropriate "where a defendant's conduct warrants condemnation and deterrence").

b. *Front pay.* The jury awarded the plaintiff $600,000 in front pay. Thereafter, the trial judge, concluding that the amount was excessive, reduced the award to $487,800. Although the judge found that the jury might have credited the plaintiff's testimony that she intended to work for the defendant for the rest of her life, and that the front pay reflected the jury's calculation of the plaintiff's salary and benefits over a thirty-year period, he concluded that the jury had failed to take mitigation into account. Noting that the plaintiff had been able to secure seasonal employment at a country club, the judge determined that the plaintiff would be able to mitigate her damages by obtaining part-time employment.[18] The judge then recalculated the award to reflect the likelihood that the plaintiff would be able to obtain, at least, seventeen weeks of full-time employment per year. Accordingly the

---

[17]On appeal, Red Roof does not contend that the punitive damage award, as remitted, was excessive.

[18]The judge reasoned as follows:

"This is not a case where the plaintiff, as a result of the defendant's wrongful conduct, is physically or emotionally incapable of ever working again; nor is this a case where the plaintiff is approaching retirement age and will not likely be able to secure suitable employment before reaching retirement such that a front pay award through to retirement age might be appropriate. Here, both plaintiff and her therapist testified that upon the trial's conclusion, plaintiff would be able to pursue new employment opportunities with reasonable diligence. The jury's award of lifetime front pay is thus in direct conflict with the weight of the evidence adduced at trial as to plaintiff's ability to comply with her ongoing duty to mitigate. Such an award fails to reasonably calculate plaintiff's lost future wages in light of uncontroverted evidence that plaintiff is capable and is likely to secure employment commensurate with her basic skills throughout her working life."

judge reduced the award by $112,200, the judge's estimate of the plaintiff's part-time wages over a thirty-year period.

The defendant raises several contentions regarding the front-pay award. First, the defendant argues that the trial judge erred in not considering whether reinstatement was a viable option. Under Massachusetts law, "a plaintiff's rejection of an objectively reasonable offer of reinstatement terminates an employee's eligibility for an award of damages based upon lost pay accruing after such a rejection." *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 389-390 (1988). Here, however, there was no evidence that the defendant offered to reinstate the plaintiff. A plaintiff is not required "to make a request for reinstatement as a prerequisite to a claim for front pay." *Id.* at 390. Thus, the defendant's contention is without merit.

In addition, the defendant argues that, since front pay is equitable in nature, the trial judge, not the jury, should have determined whether the plaintiff was entitled to receive front pay. We disagree. The award of front pay in cases brought under c. 151B is compensatory in nature. *Id.* at 387-388.

Although we think that the issue of front pay was properly before the jury, we agree with the defendant that the front pay award, even as remitted, is excessive, and lacks adequate support in the record. Cf. *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 787 (1975). "[D]amages may not be determined by speculation or guess, must be causally related to the defendant's wrongdoing, and the plaintiff should not be made more than whole." *Conway* v. *Electro Switch Corp.*, *supra* at 388 (citations omitted). Here, as noted by the trial judge, there is no evidence to suggest that the plaintiff will be unable to obtain comparable full-time employment in the future. In fact, both the plaintiff and her therapist indicated that the plaintiff did not plan to pursue full-time employment until *after* the conclusion of the trial. In the circumstances, an award of thirty years of front pay, even as remitted, is highly speculative. "[T]he greater the period of time upon which a front pay award is calculated in a case involving an at-will employee the less likely it is that the loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to the illegal conduct of the employer." *Id.* at 388-389. We conclude, therefore, that the trial judge failed to reduce the front pay award sufficiently to reflect the likelihood that at some point in the future the plaintiff will obtain full-time employment.

Accordingly, we remand the case to the Superior Court for recomputation of the front-pay damages in a manner not inconsistent with our opinion.[19] See in this regard *Labonte* v. *Hutchins & Wheeler*, 424 Mass. at 826.

*So ordered.*

---

[19]Deciding the case as we do, it is not necessary to address the plaintiff's contention that the trial judge erred in remitting the damages. Similarly, we need not reach the defendant's appeal from the trial court's postjudgment order allowing the plaintiff's motion to redact portions of the record. The documents redacted did not influence this court's decision. We note, however, that as part of the record below, the documents were properly included in the record appendix. See Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979). The plaintiff's request for appellate attorney's fees and costs is denied.