Teresa M. Brooks *vs.* Peabody & Arnold, LLP.

No. 06-P-1763.

Suffolk. October 18, 2007. - January 7, 2008.

Present: Gelinas, Duffly, & Graham, JJ.

*Practice, Civil,* Summary judgment. *Anti-Discrimination Law,* Handicap, Termination of employment, Burden of proof. *Employment,* Discrimination, Termination. *Handicapped Persons.*

In a discrimination action brought by an employee who alleged that her employment had been terminated on the basis of her disability, the trial judge properly granted summary judgment in favor of the employer, where, in the face of the employer's claim that it had terminated her employment because she had exaggerated her symptoms and had falsely claimed benefits, the employee's allegations (namely, that the employer had abruptly revoked its accommodations and had engaged in an unprecedented enforcement of its attendance policy), which lacked support in the record, did not suffice to demonstrate that the reason proffered by the employer was a pretext. [50-57]

Civil action commenced in the Superior Court Department on March 25, 2005.

The case was heard by *Patrick F. Brady*, J., on a motion for summary judgment.

*Robert R. Berluti* (*Kathryn L. Marshall* with him) for the plaintiff.

*Neil V. McKittrick* (*Elizabeth Schnairsohn* with him) for the defendant.

Gelinas, J. The plaintiff, Teresa M. Brooks, suffers from spondylolisthesis and spondylolysis.[1] She worked as a legal secretary for the defendant, Peabody & Arnold, LLP, since

---

[1] Spondylolisthesis is defined as "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum"; spondylolysis is defined as "[d]egeneration or deficient development of a portion of the vertebra." Stedman's Medical Dictionary 1813 (28th ed. 2006).

1989. After beginning short-term disability leave, the plaintiff was terminated on January 14, 2005, by the defendant because, as the defendant asserts, there was evidence that the plaintiff was exaggerating her condition and fabricating her symptoms, thus fraudulently collecting disability payments. The plaintiff then commenced this action, alleging that she was a disabled person, that the stated reason for her termination was a pretext, and that she was actually terminated because of her disability, in violation of G. L. c. 151B, § 4(16).

A judge of the Superior Court granted summary judgment in favor of the defendant and dismissed the plaintiff's complaint, concluding that the plaintiff had not offered sufficient evidence to warrant a finding that the reason for the termination was a pretext. He ruled that in the face of the defendant's claim that the plaintiff had exaggerated her symptoms and had falsely claimed the benefits, her allegations of lack of accommodation and prior knowledge by the defendants, with unclear support in the record, did not suffice to demonstrate that the reason put forward by the defendant was a pretext. We affirm.[2]

*Facts.* We view the facts, as we must, in the light most favorable to the plaintiff, the nonmoving party. The plaintiff was employed by the defendant for sixteen years as a legal secretary. She received mostly positive performance reviews during her time with the defendant, and remained with the firm despite its significant downsizing in 2002. The only unfavorable mention was her work attendance, for which she had not previously been disciplined.

On October 18, 2004, the plaintiff received a written disciplinary warning from the defendant due to inappropriate use of firm electronic mail (e-mail), inappropriate interactions with attorneys and staff, and excessive absenteeism. Eight days later, on October 26, 2004, the plaintiff received another written warning, this time about her tardiness. The plaintiff did not appear for work on the next day, October 27, 2004. Rather, the

---

[2]She also alleged that her termination violated an employment contract formed by her reliance on the defendant's employee manual, and also violated the implied covenant of good faith and fair dealing. Summary judgment also entered against her on these counts, but we do not consider them as the plaintiff has not appealed these judgments.

defendant received a facsimile transmission from her physician, Dr. Donald Gedarovich, stating that because of the plaintiff's back condition, she was "disabled from all work." The plaintiff never returned to work.

The defendant had some prior knowledge of the plaintiff's back problems. It had provided her with a special chair with added support, permitted her to miss work for physical therapy sessions, allowed her to take work home (which was later discontinued), and, after being advised that she should not be lifting heavy objects, provided personnel to help her with lifting heavy files. Dr. Gedarovich supplied the defendant with a "Certification of Health Care Provider," a document required under the Family and Medical Leave Act of 1993, in which he stated that the plaintiff had a "complete disability." Based on this certification, the defendant permitted the plaintiff to go on short-term disability leave, on the condition that she submit to an independent medical examination (IME) with Dr. Ronald Birkenfeld. The plaintiff agreed to this condition.

On December 13, 2004, when the plaintiff attended the IME with Dr. Birkenfeld, he confirmed the diagnosis of spondylolysis. He went on to state that "based on her presentation and history, it would seem that" the plaintiff had "a disabling degree of pain," and recommended that she see a surgeon to consider spinal fusion surgery.

Dr. Birkenfeld noted that the plaintiff appeared at the examination walking with a distinct forward bend and using a cane. The defendant had never observed the plaintiff using a cane before. According to the defendant, this use of a cane, coupled with the timing of the disability claim (immediately after receiving the written warnings), and the fact that the plaintiff, now receiving disability pay, left for what had earlier been agreed to as an unpaid vacation to Disney World, caused it to become suspicious of the degree of the plaintiff's infirmity. Despite this suspicion, the defendant began paying short-term disability benefits to the plaintiff on December 20, 2004, retroactive to November 15, 2004.

Acting on its suspicion, the defendant hired a private investigator. The private investigator videotaped the plaintiff from December 21 to 23, 2004, and again on January 3, 2005. The

videotape showed the plaintiff engaging in various activities, including walking up and down stairs, bending, lifting, turning, working in the yard, shopping, carrying groceries, and lifting packages from her vehicle. She never walked with a limp, used a cane, or otherwise demonstrated pain or difficulty in walking or in carrying out the other activities. She was seen entering two separate hospitals, but it was unknown what took place there.

The defendant then showed Dr. Birkenfeld a copy of the videotape. Dr. Birkenfeld noted that many of the symptoms the plaintiff demonstrated at her examination, such as walking with a "severely antalgic gait," "laborious" walking, and "splinting," were no longer present. Dr. Birkenfeld further noted that her behavior was in "marked contrast" to her presentation in his office during the initial visit. He opined that "[t]o a reasonable medical certainty, it is my opinion as a neurosurgeon licensed to practice in the Commonwealth of Massachusetts that her presentation in my offices was a marked embellishment and not compatible with what I viewed [on the videotape]." He concluded that, based upon the neurological data from the examination, and what he saw in the videotape, the plaintiff was not disabled from her job with the defendant. He did not withdraw his diagnosis of spondylolisthesis. Without reviewing the videotape with any other physician, the defendant concluded that the plaintiff had "misled the firm about [her] alleged disability in order to collect short term disability benefits," and terminated her on January 14, 2005.

The plaintiff was examined by Dr. David Kim on January 18, 2005, who reported that a magnetic resonance image performed on December 23, 2004, was entirely consistent with the plaintiff's diagnosed condition of spondylolisthesis. Dr. Kim also opined, in a report dated July 25, 2005, that he disagreed with Dr. Birkenfeld's assessment of the plaintiff, noting that spondylolisthesis and spondylolysis often caused differing levels of discomfort, at some times permitting almost normal function, and at other times causing incapacitation. Dr. Kim also stressed the plaintiff's consistent and typical description of her symptoms and how they affected her "functional ability."

On appeal, the plaintiff claims that the judge erred in grant-

ing summary judgment against her, arguing that her materials at the summary judgment stage made a showing of pretext sufficient to allow the case to be presented to a jury. She further claims that the judge erroneously relied on the "honest belief" rule set out in *Kariotis* v. *Navistar Intl. Transp. Corp.*, 131 F.3d 672 (7th Cir. 1997), contending that the rule is not the law in Massachusetts and contravenes the protective and remedial purposes of G. L. c. 151B.

*Discussion.* Summary judgment is appropriate when there is no genuine issue of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as matter of law. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974); *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp.* v. *Northern Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). "On review of summary judgment, we . . . consider the record and the legal principles involved without deference to the motion judge's reasoning." *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005). We recognize that "[s]ummary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment . . . [but] summary judgment is not always inappropriate in [such] cases[, w]here a defendant's motion for summary judgment demonstrates that the plaintiff's evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiff's favor." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 439-440 (1995).

The plaintiff argues that she presented sufficient evidence of pretext in the defendant's proffered reason for terminating her employment so as to create a genuine issue of material fact,

thus avoiding summary judgment. We review the three-step analysis required in discrimination cases where the employer articulates a seemingly legitimate reason for termination which is claimed by the employee to be merely a pretext and a cover for the real, discriminatory reason for termination.

Initially, the plaintiff has the burden to show, by a preponderance of the evidence, a prima facie case of discrimination.[3] An employer then may rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff. "[A]n employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons." *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138 (1976). The burden on the employer is not onerous. *Blare, supra* at 442. Where the plaintiff shows a prima facie case, and the employer then advances lawful grounds for the termination and produces evidence of underlying facts in support thereof, the plaintiff must persuade the fact finder by a fair preponderance of the evidence that the employer's asserted reasons were not the real reasons for the termination, but were in fact a pretext for discriminatory action. See *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 700 (1992).

These elements of employment discrimination must be viewed in the over-all context that the plaintiff bears the burden of proof on the ultimate issue of discrimination and that, "[a]lthough the three-stage order of proof 'lightens the employee's burden' by requiring the employer to provide information at the second stage which 'narrows the field of possible lawful reasons' for its decision, it does not go so far as to shift the burden of persuasion to the defendants." *Blare*, 419 Mass. at 445, quoting from

---

[3]"To establish the prima facie case of unlawful employment discrimination on the basis of handicap . . . , a plaintiff who has been terminated from employment must show that: (1) [s]he suffers from a handicap; (2) [s]he is a 'qualified handicapped person'; and (3) [s]he was fired solely because of [her] handicap." *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 821 (1997). "[T]he elements of the plaintiff's initial burden may vary depending on the specific facts of a case." *Blare, supra* at 441. Among its contentions on appeal, the defendant here argues that the plaintiff is not a handicapped person under the statute. As we rule that the plaintiff failed to offer sufficient evidence to warrant a finding of pretext, we do not reach this issue.

*Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 566 (1981). "Thus, if the evidence is in balance, the employer must prevail." *Trustees of Forbes Library, supra.* "[T]he plaintiff may, and more often than not must, carry his burden of persuasion with circumstantial evidence that convinces the fact finder that the proffered explanation is not credible." *Blare, supra.*

Here, assuming, without deciding, that the plaintiff has established her prima facie case (first element), and that the defendant has articulated a legitimate reason with support in the evidence for the termination (second element), the question becomes: has the plaintiff introduced sufficient material to demonstrate that there is a genuine issue of material fact whether the defendant's proffered reason is a pretext; that is, "[d]oes the employer's articulated reason 'lack[] reasonable support in evidence or is [it] wholly disbelievable[?]' *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 765 (1986). . . . The employer's reasons need not be wise, so long as they are not discriminatory and they are not pretext. *Lewis, supra* at 766." *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996).

With these principles in mind, we review the plaintiff's claims that she presented evidence sufficient to warrant putting the case to trial. She first argues that the defendant's abrupt revocation of its accommodations for her alleged back problems and an "unprecedented" enforcement of its attendance policy support an inference that the defendant's real motive in terminating her employment was discriminatory. Relying on *Handrahan* v. *Red Roof Inns, Inc.*, 43 Mass. App. Ct. 13 (1997), the plaintiff claims that evidence that the defendant — after originally providing accommodation for her back problems by arranging for a new support chair, allowing her to leave early to attend physical therapy, allowing her to work from home on occasion, providing personnel to assist in carrying files, and giving her uniformly good performance reviews — suddenly eliminated working from home, required timely attendance, cautioned her on two occasions for being tardy, and warned her that if tardiness continued she would be terminated, raised a genuine issue of material fact that her firing was a pretext.

We think the plaintiff's reliance on the *Handrahan* decision is misplaced. The plaintiff in *Handrahan* worked for the defendant as a housekeeper and received generally good performance reviews, although she was criticized for failing to clean her assigned rooms in a timely fashion. *Id.* at 15. After learning that the plaintiff suffered from epileptic seizures, the defendant gave her two warnings and then terminated her for a third instance of failing to comply with a "thirty-minute rule" for required completion of room cleaning duties. *Id.* at 15-16. The plaintiff argued that implementation of a thirty-minute rule did not occur until immediately after the defendant learned of her illness. The court characterized the evidence of pretext as "slim" but concluded that despite the defendant's claim that the thirty-minute rule was adopted to make it more competitive economically, the abrupt enforcement of the thirty-minute rule, resulting in the termination of the plaintiff's employment, was "suspect and could support an inference that the defendant's real motive was discrimination" because of the plaintiff's susceptibility to epileptic seizures.[4] *Id.* at 17.

Here, the plaintiff was terminated for reasons completely different from those relating to warnings that she had received from the defendant concerning her attendance.[5] Becoming suspicious of her claims concerning the extent of her back problems, the defendant hired a private investigator to conduct surveillance and to capture the plaintiff's activities on videotape. The videotape and the surveillance report revealed that while the plaintiff reported to the defendant that she could not work at her job as a legal secretary because of her back problems, and while she collected short term disability payments, she was physically able to perform many strenuous tasks inconsistent

[4]Unlike here, the plaintiff's evidence in *Handrahan*, 43 Mass. App. Ct. at 17, also included the fact that the plaintiff indicated that the first time she learned of the thirty-minute rule was on the date she received her second disciplinary warning; the fact that none of the plaintiff's evaluations mentioned a thirty-minute rule; the fact that the housekeeping handbook contained no mention of the thirty-minute rule; and the fact that there was conflicting evidence as to when the thirty-minute rule was actually implemented. There is no such evidence in this case.

[5]The defendant had simultaneously warned the plaintiff concerning her refusal to perform work for one of the partners, and for sending e-mails that contained derogatory remarks concerning the firm.

with having a bad back and, more importantly, inconsistent with her claim that she could not perform her duties as a legal secretary. The videotape showed the plaintiff working in her yard, repeatedly bending over, carrying heavy bundles, walking up and down stairs without difficulty, and walking without a limp or a cane, contrary to her presentation at the IME arranged by the defendant shortly before she went on leave. She was also physically able to drive forty minutes each way to a casino in Lincoln, Rhode Island, and to sit playing slot machines for three hours, while claiming that her back problems would not permit her to sit at her desk and type.

The defendant reviewed the videotape with Dr. Birkenfeld, the physician who had performed the IME. When the plaintiff originally came for her examination, she appeared in obvious pain, was flexed forward and to the left, had an extremely laborious gait, and was using a cane. After reviewing her medical records and conducting an examination, Dr. Birkenfeld concluded that the plaintiff suffered from chronic lower back pain associated with spondylolysis, and recommended that she consider surgery after consultation with an appropriate specialist. After reviewing the videotape, in which he observed her walking with a normal gait, going up and down stairs without difficulty, "walking . . . perfectly normal[ly] with no evidence of splinting, antalgia or other movements," twisting and turning effortlessly, repeatedly bending from the waist for substantial periods while putting objects on the ground outside her home, carrying sizable packages from a shopping mall, raising the lid of the trunk of her car, and loading and unloading a considerable number of packages, while at no time demonstrating behaviors that could be determined as being due to pain, and with no evidence that she was favoring her lumbar region, Dr. Birkenfeld concluded that "[t]o a reasonable medical certainty, it is my opinion as a neurosurgeon licensed to practice in the Commonwealth of Massachusetts that her presentation in my offices was a marked embellishment and not compatible with [activities viewed on the videotape]." Dr. Birkenfeld further stated that "[b]ased on her performance in this video and the otherwise normal neurological examination, which I determined on December 13th [the date of his examination of the plaintiff],

I do not believe that the plaintiff is disabled from her job at the defendant, as described." Based on this report, and the evidence of the videotape and the report of the private investigator, the defendant terminated the plaintiff for falsely claiming short-term disability benefits.

The plaintiff contends that the defendant should have consulted with her treating physician regarding the activities shown on the videotape, and that such consultation might have suggested that the plaintiff's condition resulted in sporadic episodes of pain, interspersed with periods of time when she was able to be free of pain and act in an "almost" normal manner, and that failure to so do supports an inference of pretext. We disagree. Nothing required the defendant to engage in exhaustive review of either the plaintiff's physical condition or the plaintiff's apparent fraudulent behavior to eliminate the question of pretext. Here, the defendant only had to provide a nondiscriminatory reason for the termination and credible evidence that the reason advanced was the real reason. See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 229 (1978). The decision to terminate the plaintiff "may be unsound or even absurd, but, if the reason given for the decision is the real reason and is nondiscriminatory," and the plaintiff cannot show that it is a pretext, then the plaintiff cannot prevail. *Ibid.*

While the abrupt enforcement of rules regarding attendance might have provided "slim," though sufficient, evidence of pretext had the defendant in fact terminated the plaintiff on those grounds, the plaintiff was terminated for an unrelated reason: because she was not in fact disabled from performing her duties as a legal secretary. She was not terminated because she was excessively absent or tardy. Nothing in the defendant's behavior leading up to the plaintiff's leave of absence and claim for disability benefits suggests that the reason offered for firing her was not the defendant's well-founded belief that she had falsely claimed disability benefits.

The plaintiff also argues that the judge failed to draw all reasonable inferences in her favor and urges that, if we do so, the outcome would be different. We disagree on both counts. Nothing in the record supports a claim that the judge did not draw all reasonable inferences in her favor, and he recognized

that duty in his memorandum of decision. Rather, the plaintiff asked the judge, and now asks us, to speculate, rather than infer, and we need not do so. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz* v. *R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

The plaintiff next argues that the judge erred in relying on the "honest belief" rule set out in *Kariotis* v. *Navistar Intl. Transp. Corp.,* 131 F.3d at 674. She argues that application of such a principle in summary judgment cases involving claims of discriminatory termination would frustrate the protective and remedial purpose of G. L. c. 151B, § 4(16), that is, the public policy of protecting "handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear," *Dahill* v. *Police Dept. of Boston,* 434 Mass. 233, 240 (2001), quoting from *Cox* v. *New England Tel. & Tel. Co.,* 414 Mass. 375, 383-384 (1993), and would thwart the legislative directive that G. L. c. 151B be liberally construed for the remedial purpose for which it was enacted, which is "to provide judicial and administrative remedies for destructive acts of discrimination in the workplace." *Ayash* v. *Dana-Farber Cancer Inst.,* 443 Mass. 367, 391-392 (2005).

In *Kariotis, supra* at 674, the court articulated the "honest belief" proposition as follows: "while [an employer] may have been mistaken in concluding [an employee] actually had committed fraud, at the very least [the employer] had an honest belief that [the employee] had done so." The employer's "honest belief" defeats the employee's claims of pretext. *Ibid.* The plaintiff argues that the appropriate rule is articulated in *Smith* v. *Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998), where the court seemed to reject the "honest belief" rule to the extent that it "credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and mythology."

Massachusetts courts have not adopted either the "honest belief" rule stated in *Kariotis, supra,* or a limitation thereof explained in *Smith, supra.* We need not do so now. Our focus at

the summary judgment stage is to determine whether the defendant has articulated a legitimate, nondiscriminatory reason for termination, sufficient to rebut the plaintiff's prima facie case of discrimination, and whether the plaintiff has then produced evidence sufficient to warrant a finding that the reason advanced was a pretext. Where, as here, we conclude that the defendant has demonstrated that "the plaintiff's evidence of intent, motive, or state of mind [with regard to pretext] is insufficient to support a judgment in plaintiff's favor," *Blare*, 419 Mass. at 440, summary judgment is appropriate.

*Judgment affirmed.*