Fabricant, Judith, J.
INTRODUCTION
This action presents the plaintiffs claim that the Sex Offender Registry Board (SORB) and Jeanne Holmes, its executive director, unlawfully disclosed his status as a level one sex offender, thereby causing his loss of a job opportunity. Before the Court is the defendants’ motion for summaiy judgment. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The record properly before the Court in connection with the summary judgment motion and opposition establishes the following factual background. Where facts are disputed, the Court presents the version most favorable to the plaintiff that is supported by admissible evidence.[1]
In 2005, the plaintiff pled guilty in another state to seven misdemeanor counts of sexual assault. As a result of his conviction, he was required to register with SORB. After a hearing, SORB classified him as a level 1 sex offender. His appeal from that classification was unsuccessful.
In June of 2008, plaintiff applied for a position as a substitute teacher with the Boston Public Schools (BPS). The application included a release of his criminal offender record information (CORI) and sex offender record information (SORI). BPS submitted an inquiiy to SORB, to which it received a letter of response that included the following:
*342 There is no information available regarding the aforelisted individual(s) as identified in your request. Information is not available because this individual: (1) is not known to the SORB to be a sex offender; (2) he/she has been finally classified as a level 1 offender; or (3) he/she has not yet been finally classified as a level 2 or level 3 offender.
BPS did not hire the plaintiff. Its reason, the plaintiff contends, was that, in light of BPS’s experience with SORB’s practices in responding to such inquiries, the letter response conveyed to BPS that SORB had some information regarding the plaintiff.[2]
Plaintiffs counsel complained to SORB by letter dated July 3, 2008, addressed to its Chair, Saundra Edwards. Counsel’s letter asserted that “we have determined that the Board issues two different types of responses to queries to the Board. One form is sent out if the query is about a person who is either in pre classification status or is a Level One offender. By using two different forms to respond to queries you are in effect telling people that someone is a Level One offender or is in pre-classification status, all in violation of the law.” Counsel also complained that, in the course of a telephone inquiry, a SORB employee had confirmed the spelling of the plaintiffs name, thereby revealing the existence of information about him in SORB’s records. The letter requested an immediate response, with “assurances that your Board and its employees immediately cease this conduct."
Edwards, who had been Chair of SORB since 2007 and functioned as its administrative and policy head, had never previously received any complaint regarding SORB’s manner of responding to inquiries. Upon receipt of the letter, as she testified at her deposition, she gave it to SORB’s Executive Director, Jeanne Holmes, “to look into.” Holmes had been in her position for some six months at the time, since January of 2008. Her role, as she described it in her deposition, was to function as chief of staff to the Chair, supervising the staff and acting on any directions received from the Chair. Holmes, like Edwards, had no previous awareness of any complaint regarding the manner of SORB’s response to inquiries. Nor did she then have any familiarity with its manner of response, other than that SORB employee David Raines supervised the process.
After receiving the letter, and obtaining further information from plaintiffs counsel by telephone, Holmes consulted Raines. According to his deposition testimony, Raines followed a procedure that had been established by SORB’s previous Director of Operations, Robert Baker. Baker had left SORB in 2007, before Holmes arrived. Under the procedure Baker had established, when SORB received an inquiiy about a person classified as a level 1 offender, or registered but not yet classified, it would respond with a letter in the form it provided to BPS regarding the plaintiff.[3] If the subject of the inquiiy was not registered at all, SORB would respond by placing a stamp on the inquiry form, indicating that the individual is not known to SORB to be a sex offender, and returning the form to the inquiring party.[4]
After her discussion with Raines, and consultation with SORB’s legal counsel, Holmes had further discussion with Edwards. According to Edwards’s deposition testimony, Holmes reported her view that the language on the existing stamp “was confusing or would have alerted the requestor to the fact that an individual was a level that is not to be publicly disseminated.” At Holmes’s recommendation, Edwards approved a change in procedure. SORB acquired a new stamp, with language substantively the same as that in the letter previously used, indicating that no information is available because the individual is either unknown to SORB, classified as level 1, or not yet classified. Since September 9 of2008, SORB has used that stamp to respond to all written inquiries regarding individuals not classified as level 2 or 3 sex offenders.
Plaintiff was either uninformed of or unsatisfied with SORB’s change of practice; he brought this action on September 10, 2008, naming SORB and Holmes. His second amended complaint, filed on April 3, 2009, asserts eight counts, and seeks both damages and declaratoiy and injunctive relief as to both defendants. In a decision dated November 19, 2009, the Court (Connors, J.), dismissed counts III, IV, and V, leaving five counts remaining. Although the language of some of these counts is ambiguous, the claims that remain appear to be as follows. Count I asserts a claim against SORB, and apparently also against Holmes in her official capaciiy, under 42 U.S.C. §1983, alleging unlawful dissemination of the plaintiffs status as a level 1 sex offender, in violation of G.L.c. 6, §1781, J, and N.[5] Count II asserts the same claim against Holmes individually. Count VI asserts a claim against Holmes, individually, for violation of G.L.c. 214, §1B.[6] Count VII asserts the same claim against Holmes, again individually, “under the doctrine of respondeat superior” for conduct of “employees acting under her direction or control.” Count VIII, finally, asserts a claim against SORB for violation of the same statute. Defendants move for summaiy judgment on all remaining counts.
DISCUSSION
The Court grants summaiy judgment when the record establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); see Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). A fact is material if it would affect the outcome of the case. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). A dispute of fact is genuine if the record, viewed in the light most favorable to the non-moving party, could lead a rational trier of fact to find for that party. Brooks v. Peabody & Arnold, LLP, 71 Mass.App.Ct. 46, 50 (2008); Cole v. New England Mut. Life Ins. Co., 49 Mass.App.Ct. 296, 298 (2000). The moving party bears the burden of affirmatively demonstrating that no genuine issue of fact exists. Pederson v. Time, Inc., 404 Mass. 14, 16-17 *343 (1989). The moving party may meet that burden by showing an absence of proof concerning an essential element of the non-moving party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party demonstrates the absence of a triable issue, the non-moving party must establish the existence of a genuine dispute. Pederson, 404 Mass. at 17.
1. Counts I and II: Claims Under 42 U.S.C. §1983.
The federal civil rights act, 42 U.S.C. §1983, provides a cause of action against a “person” who, acting under color of state law, deprives another of rights protected by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). A “person,” for purposes of the act, does not include the state itself, any of its agencies, or its officials in their official capacity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see Robinson v. Commonwealth, 32 Mass.App.Ct. 6, 10 (1992).[7] Thus, a claim under §1983 cannot lie either against SORB, a state agency, or its executive director in her official capacity. Count I therefore fails to state a claim, and must be dismissed.
Count II seeks relief, both monetary and injunctive, against Holmes in her individual capacity. A public official is immune from personal monetary liability for official conduct unless the particular conduct violates a right that is clearly established in federal law at the time of the conduct. Davis v. Scherer, 468 U.S. 183, 194 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Here, the conduct alleged is disclosure of personal information that state (not federal) law designates as private — that is, the plaintiffs status as a level 1 sex offender. The only identified source of federal law that might arguably provide a right against disclosure of private information is the due process clause of the Fourteenth Amendment. Whether that provision does establish such a right is “an unsettled and hotly contested question of law.” Coughlin v. Town of Arlington, 2011 WL 6370932 (D.Mass. 2011) *13, citing Nat'l Aeronautics & Space Admin. v. Nelson, 131 S.Ct. 746, 764-65 (2011); Borucki v. Ryan, 827 F.2d 836, 844-45 (1st Cir. 1987). Any such right that may eventually be held to exist cannot form the basis for personal liability under § 1983, since it was not clearly established at the time of Holmes’s alleged conduct. The claim for damages against Holmes under §1983 is thus barred by qualified immunity, and must be dismissed.
Section 1983 does permit injunctive relief against a state official to prevent future violations of rights guaranteed by federal law. See Ex Parte Young, 209 U.S. 123, 157 (1908). Here, however, even if the Court were to conclude that federal law provides a right to protection of private information, that the conduct in issue here violated that right, and that Holmes is the official with authority to control SORB’s practices in this regard, the Court would not exercise its equitable power to enjoin a practice that was abandoned nearly four years ago. Plaintiff does not allege, and has not offered evidence to prove, that SORB’s current manner of responding to inquiries involves any unlawful disclosure. Nor has he offered any reason to expect that SORB will change its practice at any time in the foreseeable future such that any unlawful disclosure would occur. In the absence of such a showing, no occasion appears for injunctive relief.[8] Counts I and II will therefore be dismissed in their entirety.
2. Counts VI, VII, and VTII: Claims Under G.L.c. 214, §1B.
As noted supra, G.L.c. 214, §1B, provides a cause of action for damages and injunctive relief to enforce the right of any person “againstunreasonable, substantial or serious interference with his privacy.” Unreasonable dissemination of private information constitutes interference with privacy for purposes of this statute. Bally v. Northeastern University, 403 Mass. 713, 720 (1989), and cases cited. The sex offender registry statute, c. 6, §1781, authorizes and directs SORB to disseminate specified information about level 2 and 3 sex offenders, but not level 1 offenders. The Court therefore assumes, for present purposes, that plaintiffs status as a level 1 sex offender is private information for purposes of c. 214, §1B.[9]
Plaintiff s claims under this statute against Holmes individually (counts VI and VII), nevertheless face two insuperable obstacles: lack of evidentiary support, and statutory immunity. The record presented, as summarized supra, is devoid of evidence to indicate that Holmes herself disseminated any information about the plaintiff, or directed anyone to do so. Indeed, plaintiff does not contend that she did. His contention, rather, is that she was responsible for a policy of SORB under which such dissemination occurred, and/or that she is vicariously liability for dissemination by SORB employees under the doctrine of respondeat superior.
The record does not support the contention that Holmes was responsible for any policy under which dissemination of information about the plaintiff occurred. Rather, the evidence indicates that SORB responded to the inquiry about the plaintiff according to a practice established by Holmes’s predecessor, before Holmes took office, and of which she was unaware until alerted by plaintiffs counsel’s letter. Upon receipt of the letter, Holmes investigated, and then recommended a change in practice. Edwards approved the change, and SORB implemented it, within little more than two months from the date of plaintiff’s counsel's letter. These facts provide no basis for' personal liability against Holmes. As to vicarious liability, Holmes has none for the conduct of other SORB employees, because she is not their employer; SORB is. See Hohenleitner v. Quorum Health Resources, 435 Mass. 424, 435-36 (2001); Campbell v. Thornton, 368 Mass. 528, 535-36 (1975); Robinson v. Commonwealth 32 Mass.App.Ct. at 12. Moreover, even if there were evidence that Holmes disseminated information about the plaintiff, or directed others to do so, statutory immunity would preclude his claims against her. General Laws, c. 6, §1780, provides that *344 “public officials acting in good faith shall not be liable in a civil . . . proceeding for any dissemination of sex offender registry information or for any act or omission pursuant to the provisions of 178C to 178P, inclusive.” Nothing in the record before the Court indicates any action by Holmes other than in good faith, nor has plaintiff so claimed. Counts VI and VII must therefore be dismissed.
Count VIII is directed against SORB, and thus against the Commonwealth itself. The Commonwealth is immune from suit, except insofar as it has waived its sovereign immunity by statute. DeRoche v. Mass. Comm’n Against Discrimination, 447 Mass. 1, 12 (2006); Morash & Sons, Inc. v. Commonwealth, 363 Mass. 612, 615 (1973). Chapter 214, §1B, includes no language that would effect a waiver of sovereign immunity. The Massachusetts Tort Claims Act, G.L.c. 258, does provide such a waiver as to certain types of claims, but expressly preserves sovereign immunity as to others. Among the claims for which the act preserves sovereign immunity are “any claim arising out of an intentional tort, including ... invasion of privacy.” G.L.c. 258, § 10(c). SORB is thus immune from liability for damages under c. 214, §1B. The question remains whether the case should be permitted to proceed against SORB on the plaintiffs claim under that statute for injunctive relief. For the reasons discussed supra with respect to injunctive relief under the federal civil rights act, the Court concludes that it should not.
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Motion for Summary Judgment is ALLOWED.

 The defendants have moved to strike portions of the plaintiffs’ response to the defendant’s statement of undisputed facts, and his statement of additional facts, filed pursuant to Superior Court Rule 9A(b)(5), on three grounds: (1) paragraphs 17, 18, and 19 assert a dispute without identifying any evidence; (2) many of the additional facts plaintiff asserts are Immaterial to the issues raised by the motion; and (3) certain of the facts the plaintiff asserts rely on evidence that is hearsay or otherwise inadmissible. The Court agrees with defendants as to the deficiencies identified, but not as to the remedy sought. Regarding assertions of dispute without reference to evidence, the proper remedy is that the facts stated by the moving party, if established by the evidence cited, are deemed admitted. As to assertions of additional facts that are not material to the motion, or that are not supported by admissible evidence, the Court disregards them, as they do not prevent summary judgment. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989) (party opposing summary judgment must put forward admissible evidence establishing genuine dispute of material fact); Madson v. Erwin, 395 Mass. 715, 721 (1985) (unsupported assertions, conclusory statements, and inadmissible evidence such as hearsay are “unacceptable to defeat summary judgment”); Dziamba v. Warner & Stackpole, 56 Mass.App.Ct. 397, 401 (2002); Mass.R.Civ.P. 56(e) (“When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial”); Superior Court Rule 9A(b)(5)(ii) (“the moving party’s statement of a material fact shall be deemed to have been admitted unless controverted as set forth in his paragraph”).

 Plaintiff relies on his own deposition testimony that a BPS official told him that “something came up on your SORI,” and that another BPS official told plaintiffs mother, as his mother later recounted to him, that “by virtue of the fact that they received this letter and not the other one served as a de facto notification that there was something, information available about me in the SORI database . . . She may have said something to the effect that one letter there is only a stamp and one letter is a print off and . . . the stamp comes back if there is absolutely nothing in the system and the letter comes if there might be something.” The Court agrees with defendants that this testimony is hearsay, not properly considered on summary judgment. The Court notes, however, that the deposition testimony of Joseph Shea, BPS’s academic superintendent, provides admissible evidence on the same point. Shea testified to BPS’s “understanding” that “if they receive a letter from either the CORI Board or they received this letter, that the person involved, the person in question, has some kind of either offense or at least some indication that the board — it’s the board’s way of letting us know there’s a problem with the candidate.”

 Inquiries could come in electronic form, as well as in writing. Electronic inquiries, according to Raines’s deposition testimony, would elicit an e-mail response with a password protected spreadsheet attached.

 Baker, in his deposition testimony, described the practice differently; a letter inquiry would elicit a letter response, and an inquiry on an inquiry form would receive a stamp response. For purposes of the present motion, the court adopts Raines’s version, which is more favorable to the plaintiffs position.

 General Laws, c. 6, §1781, regarding provision of information by SORB in response to inquiries, provides in pertinent part that “(i]nformation about an offender shall be made available pursuant to this section only if the offender is a sex offender who has been finally classified by the board as a level 2 or level 3 sex offender.” Section 178J governs provision of information by police departments regarding offenders classified as level 2 or 3. Section 178N prohibits use of sex offender information for specified purposes, and establishes penalties for prohibited use.

 General Laws, c. 214, §1B, provides: A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.

 In this respect, state agencies and officials differ from municipalities, which have been held to be persons for purposes of §1983. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690-91 (1978).

 The complaint does not include a distinct count for declaratory judgment pursuant to G.L.c. 231A, but does reference that statute in count I. To the extent that count I is intended to assert a claim for declaratory judgment, the Court concludes that the claim should be dismissed, as any actual controversy that may have existed at the time of the events in issue has been resolved by SORB’s change in practice nearly four years ago.

 There is room for debate on the point, since the criminal convictions that give rise to the obligation to register are matters of public record. See generally, Globe Newspaper Co. v. Fenton, 819 F.Sup. 89, 101 (D.Mass. 1993) (holding unconstitutional statute that imposed sanction for communication of criminal offender record information in publicly available judicial record).